MARTIN DICKSTEIN AND RICHARD PALCANIS, APPELLANTS, *v.* RONALD RAY WILLIAMS, JOYCE C. WILLIAMS, ROBERT McKEE, KATHRYN McKEE, KEITH MACY, ALLEN D. BRUNER, JANIS BRUNER, PAT A. TRIPPLE, PEARL A. PETERSON, RICHARD COTTER, AND BARBARA COTTER, RESPONDENTS.

No. 8974

December 6, 1977                    571 P.2d 1169

*William K. Lohse and Hale & Belford,* Reno, for Appellants.

*Cunningham & Williams,* Reno, for Respondents.

## OPINION

*Per Curiam:*

This is an appeal from an injunction restraining the appellants, who were the defendants below, from continuing construction of an addition to their home and ordering removal of the completed construction, which the court found violated the deed restrictions covering the property.

## 1. *The Facts.*

Appellants, Martin Dickstein and Richard Palcanis, and all the respondents were residents and property owners in the Prospect Hill Subdivision north of Reno. Each lot in the subdivision was subject to the following deed restriction:

> *ARTICLE III: USE*
> 1. No portion of said property shall be used except for private residential purposes, nor shall any structure be erected or maintained on any lot other than one detached single family dwelling not, [sic] exceeding one story from ground level in height. . . .

In December 1974, appellants informed their friend and neighbor, Respondent Joyce C. Williams, of their intention to build an addition to their home. The addition was described as a "split level," with a music room over a sunken garage. Construction began January 15, 1975. When the walls for the garage were erected, Mr. and Mrs. Williams became concerned over the height of the structure and the potential interference with their view. They invited Mr. Palcanis over to discuss their objections. At the Williamses' request, an architect visited the site and developed several alternative methods of construction, all of which were rejected by appellants.

On January 31, the Williamses' attorney called Mr. Palcanis and informed him that if construction on the room over the garage commenced the Williamses would take appropriate legal action. Nevertheless, construction proceeded, and a complaint was filed on February 7, 1975, by the Williamses, joined by a number of other property owners in the subdivision, alleging threatened and actual violation of the one-story height restriction.

On February 12, 1975, the first day of hearings on respondents' motion for a preliminary injunction, construction on the second level was still in progress. By February 17, the second day of the hearings, appellants' contractor testified that he had completed the work he was to do on the second level, with finishing work to be done by appellants themselves.

A preliminary injunction was issued on February 24, 1975, restraining appellants from continuing work on the second level, pending a hearing on the merits.

A subsequent hearing on respondents' motion for a permanent injunction was held in March 1976, and the motion was granted on May 26, 1976. Appellants were permanently restrained from further construction on the addition above the ceiling of the garage, except for the building of an adequate

roof, and were further ordered to remove the walls and roof of the room constructed above the garage. They were also ordered to pay respondents' cost of suit.

Appellants seek reversal, contending that (1) the trial court erred in its interpretation of the restrictive covenant, (2) respondents were guilty of laches, and (3) damages would have been the only appropriate remedy.

2. *The Issues.*

A. *The Restrictive Covenant.*

Appellants contend that the phrase "one story from ground level" used in the deed restriction is ambiguous and therefore should be strictly construed against those enforcing the provision. The trial judge found no ambiguity in the phrase "one story." He construed the term "ground level" in the light most favorable to appellants that was consistent with common sense, and still found that they had violated the covenant.

There is no basis in the record for overturning the determinations of the trial court. Upholding a similar injunction restraining the building of a second level over a garage, a California appellate court found "nothing vague, ambiguous or uncertain in the meaning of the restrictive phrase 'one story in height.'" *See* King v. Kugler, 17 Cal.Rptr. 504, 507 (Cal.App. 1961).

Restrictive covenants are strictly construed, but if they are to have meaning they must be enforced. Firth v. Marovich, 116 P. 729, 731 (Cal. 1911). While there was conflicting testimony whether appellants' structure violated the covenant, the trial court's finding was supported by substantial evidence, including the testimony of the author of the covenants himself. Additionally, the trial judge personally visited the site before he made his final determination. Any conflicts in testimony are to be resolved by the trier of fact. L. M. Enterprises, Inc. v. Kenny, 92 Nev. 653, 556 P.2d 547 (1976). Furthermore, where a trial court, sitting without a jury, makes a determination predicated upon conflicting evidence, that determination will not be disturbed on appeal where supported by substantial evidence. J & J Bldg. Contractors, Inc. v. Savage Constr., Inc., 92 Nev. 590, 555 P.2d 488 (1976).

B. *The Laches.*

While citing no authority in support of their argument, appellants urge that respondents were guilty of laches. The court

below rejected this suggestion and specifically found that respondents had acted diligently. We agree.

It is difficult to fathom just how respondents should or could have acted more promptly in the instant case. They had a right to assume that appellants would respect and abide by the covenants. *See* Archambault v. Sprouse, 63 S.E.2d 459 (S.C. 1951). Appellants, who were fully aware of the restrictions, chose to rely on the mistaken assumption that they were acting legally and properly. They did so at their own risk. Smith v. Nelson, 368 P.2d 566 (Colo. 1962).

C.   *The Damages.*

Appellants contend that, since the violation was not merely threatened, but had already occurred, respondents were limited to damages. They rely on the language of the enforcement clause of the subdivision restrictions, which states, in pertinent part:

> *ARTICLE VIII:   VIOLATION   AND   ENFORCE-MENT*
>
> 1.   . . . [I]t shall be lawful . . . for the owner or owners of any lot or lots delineated upon said [subdivision] map, to institute and prosecute any proceeding at law or in equity against Declarant or any person, firm or corporation violating or threatening to violate any of the conditions, restrictions or covenants herein contained and such action may be maintained for the purpose of preventing the violation or to recover damages for a violation, or for both of such purposes. . . .

This contention is meritless. Even if appellants' interpretation of the clause is accepted, appellants were both violating and threatening a continued violation of the covenant at the time the suit was instituted. Courts have commonly ordered removal of structures erected in violation of restrictive covenants. *E.g.,* Smith v. Nelson, 368 P.2d 566 (Colo. 1962); Hanson v. Hanly, 383 P.2d 494 (Wash. 1963); McDonough v. W.W. Snow Constr. Co., 306 A.2d 119 (Vt. 1973).

Finally, the appellants urge that the case has become moot as to the respondent Williamses, who have sold their home and left the subdivision. This is not so, and even if it were, the decision of the district court must be affirmed for the benefit of the remaining respondents, who are all property owners and residents of the subdivision.

Article VIII, § 1, of the subdivision restrictions specifically provides: "The conditions, restrictions or covenants herein contained shall bind and inure to the benefit of and be enforceable by . . . the owner or owners of any lot contained within said property. . . ."

Several of the respondent residents testified that they were concerned about the detrimental effect of appellants' violation of the restriction on the future character of the subdivision. Furthermore, the effect on the Williamses' former property remains the same. The beneficial results of private-land-use restrictions have previously been recognized by this court. Meredith v. Washoe Co. School Dist., 84 Nev. 15, 435 P.2d 750 (1968). The covenant must be enforced, whether or not the Williamses remain parties to the suit.

For this reason, we affirm.[1]

---

[1]The Governor designated Howard W. Babcock, Judge of the Eighth Judicial District, to sit in place of Hon. Gordon Thompson, Justice, who was disabled. Nev. Const. art. 6, § 4.