Stacy "Sand" LAMOREUX, Appellant,

v.

Robert J. LANGLOTZ and David A. Whitmore, Appellees.

No. S-2064.

Supreme Court of Alaska.

June 3, 1988.

Daniel W. Beardsley, Anchorage, for appellant.

Patrick T. Brown, Fairbanks, for appellees.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

## OPINION

BURKE, Justice.

This appeal raises two questions. The first is whether a developer's suit to enforce restrictive covenants was premature. The second is whether the superior court erred in enforcing the covenants.

## I. FACTS AND PROCEEDINGS

Appellee Robert J. Langlotz is the original subdivider of the Marian Hills Subdivision, which comprises about 20 acres of land in the Fairbanks recording district. In September 1984, he recorded restrictive covenants regulating the use of land in the subdivision.

The covenants restrict the subdivision to residential uses. The minimum dwelling size is 1,000 square feet; for a dwelling with two or more levels, the minimum ground floor area is 800 square feet. The exterior of each dwelling must be completed within two years after construction commences. All dwellings must be constructed and designed in conformance with FHA minimum standards and local building code requirements. No temporary structure may be used as a residence.

In May 1985, appellant Stacy "Sand" Lamoreux bought a lot in Marian Hills. He received a copy of the covenants at closing. In August 1985, appellee David Whitmore purchased a neighboring lot.

Lamoreux began building a home on his lot on May 20, 1986. Rather than use a traditional continuous concrete foundation, Lamoreux built a "pad and post" foundation.[1] He then started building the house. The structure was approximately 22.5 feet by 18.5 feet, or 420 square feet.

Langlotz learned of the construction about a week after it began. He visited the site and measured the building. When Langlotz tried to discuss the covenant minimum size requirements with Lamoreux, Lamoreux ordered him off the property.

On June 18, Langlotz and Whitmore sued Lamoreux to enjoin him from building a house which does not comply with the covenants. Specifically, they alleged that Lamoreux violated the size and FHA minimum standard requirements and was living in a temporary structure. Lamoreux answered, alleging that he had two years to complete the exterior and bring his house into compliance with the size and standard restrictions, and that the covenants did not forbid him from living in the house while he built it.

Following a bench trial, Superior Court Judge James R. Blair entered judgment for Langlotz and Whitmore. Judge Blair ruled that Lamoreux must substantially comply with the minimum size requirements and FHA foundation standards by June 15, 1987. If he does, Lamoreux must then substantially complete the exterior by September 1, 1987. If Lamoreux does not substantially comply with the size and foundation requirements by June 15, he must remove the structure by July 1, or Langlotz may have it removed.[2] This appeal followed.

## II. WAS LANGLOTZ' CLAIM FOR DECLARATORY AND INJUNCTIVE RELIEF RIPE FOR JUDICIAL DETERMINATION?

Lamoreux argues that Langlotz' claim was not ripe because the covenants gave Lamoreux two years in which to complete the exterior of his dwelling. Langlotz contends that, had he not acted immediately, his claim might well have been barred by the defense of laches.[3]

Ordinarily, a cause of action accrues when all the essential elements forming the basis for the claim have occurred. *See Russell v. Municipality of Anchorage,* 743 P.2d 372, 375 (Alaska 1987); *Hanebuth v. Helicopter International,* 694 P.2d 143, 146 (Alaska 1984). If a suit is commenced before the claim is ripe, the suit is premature and must be dismissed. *See Linck v. Barokas & Martin,* 667 P.2d 171, 173–74 (Alaska 1983) (complaint alleged actual present damage and therefore stated valid claim for relief).

Courts sometimes take a different approach when the claimant seeks to enjoin violations of restrictive covenants. For example, when one neighbor sued to enjoin a setback violation four months after the vio-

1. Lamoreux' pad and post foundation consists of 4 or 6 concrete pads measuring 2 feet by 4 feet by 1 foot. The pads are buried in the ground. A concrete post comes out of the top of each pad, and the house is built atop the posts.

2. Lamoreux unsuccessfully sought a stay of judgment pending appeal. Langlotz informed the court that he has not yet attempted to enforce the judgment.

3. The issues on appeal present questions of law on which we may exercise our independent judgment to determine whether the relief granted by the superior court was proper under the established facts. *See Walsh v. Emerick,* 611 P.2d 28, 30 (Alaska 1980).

lator laid his foundation and began construction, the court ruled that the plaintiff neighbor was guilty of laches. *Smith v. Spencer,* 81 N.J.Eq. 389, 87 A. 158, 159 (1913). Although plaintiff had immediately informed the violator of the suspected violation and had corresponded extensively with him, the court concluded that plaintiff had a duty to file legal proceedings immediately, before there was a substantial expenditure of money. *Id.*

Similarly, in *McRae v. Lois Grunow Memorial Clinic,* 40 Ariz. 496, 14 P.2d 478, 481–82 (1932), the court ruled that plaintiff was guilty of laches when it filed suit to enforce a residential-use-only restriction ten days after defendant began excavation for the foundation. Plaintiff failed to request a temporary restraining order, and defendant completed construction a month before trial. *Id.* Since injunctive relief was not feasible plaintiff was limited to recovery of damages. *Id.*

More recent decisions reflect a willingness to allow the complaining neighbor some time to pursue extra-judicial avenues of redress. For example, in *Leaver v. Grose,* 610 P.2d 1262 (Utah 1980), the court enforced a "single-family dwelling only" restriction against a homeowner who built an apartment in her basement. The court ruled that the homeowner proceeded at her own risk when she continued building after her neighbors complained. *Id.* at 1264. The neighbors having informed the homeowner of the existence of the controversy, the court ruled that equity did not require them to file suit immediately. *Id.*

Similarly, in *Dickstein v. Williams,* 93 Nev. 605, 571 P.2d 1169 (1977), the court enforced a building height restriction. The complaining neighbor learned of the violation in January and filed suit a month later. *Id.,* 571 P.2d at 1170. The court ruled that the complaining neighbor acted diligently and the violating homeowner acted at his own risk after he knew of his neighbor's complaint. *Id.* at 1171. Thus, the home-

owner was required to remove the offending addition, even though it was completed three months before final judgment was entered. *Id.; accord Smith v. Nelson,* 149 Colo. 200, 368 P.2d 566 (1962).

We have never addressed this precise issue. However, in *City and Borough of Juneau v. Breck,* 706 P.2d 313 (Alaska 1985), we ruled that Breck, a citizen plaintiff, was not entitled to an order enjoining the city from completing a "design-build" construction project. The contract was signed and construction began in May. *Id.* at 314. Breck was aware of possible city charter violations as early as March, and appeared before the borough assembly at least nine times. *Id.* By the time Breck filed suit in August, construction was 50% complete. *Id.* at 315. We ruled that Breck had unreasonably delayed in filing suit, because she waited until long after it was no longer reasonable to assume that the assembly would comply with the charter. *Id.* Once the city was committed to an irrevocable course of conduct, a reasonable person would have been galvanized into legal action. *Id.* at 316.

We believe that Langlotz' claim was ripe for review. Once Lamoreux began to build in apparent violation of the covenants, and refused to discuss the problem, a reasonable person would have been galvanized into action. Although a claim for damages might have been premature, we conclude that Langlotz was entitled to pursue declaratory and injunctive relief.[4]

## III. DID THE SUPERIOR COURT ERR BY ORDERING LAMOREUX TO COMPLETE THE DWELLING IN LESS TIME THAN THE COVENANTS PERMIT?

Lamoreux argues that the superior court erred by requiring him to substantially complete the foundation in 13 months and the exterior in 16 months. Langlotz contends that the time frames in the court's

4. Declaratory relief is available provided an actual controversy exists between the parties. *Greater Anchorage Area Borough v. City of Anchorage,* 504 P.2d 1027, 1035–36 (Alaska 1972), *overruled on other grounds, City and Borough of*

*Juneau v. Thibodeau,* 595 P.2d 626 (Alaska 1979); *Jefferson v. Asplund,* 458 P.2d 995, 998–99 (Alaska 1969). The dispute between Langlotz and Lamoreux is not a sham.

order were reasonably calculated to ensure compliance with the two-year completion requirement in the covenants.

 Covenants are construed to effectuate the parties' intent. *Lenhoff v. Birch Bay Real Estate,* 22 Wash.App. 70, 587 P.2d 1087, 1089 (1978). Clear and unambiguous language should be accorded its plain meaning. *Id.* Because restrictions are in derogation of the common law, they should not be extended by implication and doubts should be resolved in favor of the free use of land. *Id.; accord Hallet v. Sumpter,* 106 F.Supp. 996, 999 (D.Alaska 1952).

 The Marian Hills covenants require that all dwellings "be constructed and designed to assure conformance to minimum standards of the Federal Housing Administration and local building code requirements." Terry Duszynski, a HUD–certified FHA building code compliance inspector, inspected Lamoreux's pad and post foundation and testified that it failed to meet minimum FHA standards because the pads were not connected into a continuous foundation and were not buried to the proper depth. On cross-examination, he testified that it is possible to obtain FHA approval of a pad and post foundation upon submission of an engineer's drawing and a request for a waiver. David Schaefer, an engineer, testified that he had examined the pad and post foundation and found it adequate to support the house, and that he would be willing to submit an engineered foundation waiver to the FHA. The superior court ordered Lamoreux to bring his foundation into compliance or secure an FHA waiver by June 15, 1987. The substance of the order is not seriously challenged; Lamoreux objects primarily to the *timing.*

Lamoreux testified that it takes 90 to 150 days to construct an average home of 1000 to 1200 square feet. The covenants required Lamoreux to complete construction of the exterior of his home by May 1988. The superior court estimated that, given the relatively brief Fairbanks construction season, Lamoreux would not meet the May 1988 deadline unless he substantially completed the exterior by September 1987. In order to substantially complete construction by September 1987, the court reasoned that an acceptable foundation must be in place 90 days before that; hence, the court ordered Lamoreux to comply with the covenant foundation requirement by June. According to the court, Lamoreux could use the time between September 1987 and May 1988 to complete the inside of the house.

We believe that the superior court was justified in requiring Lamoreux to comply with the covenant foundation requirement by June 1987. However, the court erred in ordering Lamoreux to complete the exterior of his home by September 1987, because the order effectively shortens the permissible construction period by eight months. The covenants unequivocally allow an owner two years to substantially complete the exterior of his home.

The superior court's error was compounded by the passage of time during this appeal. Once the deadline for completing the foundation passed, Lamoreux would be naturally reluctant to invest additional funds in the project because he was faced with a tear-down order. Fairness dictates that Lamoreux be given a reasonable period of time in which to obtain FHA approval of the foundation and complete the house. Since Lamoreux testified that it takes 90 to 150 days to construct an average home, we conclude that Lamoreux should have until October 31, 1988 to comply with the covenants.

AFFIRMED AS MODIFIED.[5]

---

5. We have considered the other issues raised on appeal and find them to be without merit.