Patrick KOHL and Thu Thi
Kohl, Appellants and
Cross–Appellees,

v.

Roger LEGOULLON and Sandra
Legoullon, Appellees and
Cross–Appellants.

Nos. S–7229, S–7239.

Supreme Court of Alaska.

Jan. 24, 1997.

Rehearing Denied March 27, 1997.

*OPINION*

RABINOWITZ, Justice.

## I. INTRODUCTION

This appeal involves issues relating to the enforcement of covenants setting height and setback restrictions on appellants Patrick and Thu Thi Kohls' home. Appellees Roger and Sandra Legoullon seek to enforce either the height or setback restrictions against the Kohls, requiring them to remove the top floor of their house. The Kohls argue that they are not in violation of the height covenant, that they received a waiver of the setback covenant, that the Legoullons should be prevented by laches from enforcing the setback covenant, and that the superior court erred in enforcing the setback covenant by requiring the Kohls to lower the height of the home.

## II. FACTS AND PROCEEDINGS

The Legoullons purchased a lot and built a house in Montclair Subdivision in Fairbanks in 1989. The location afforded them a majestic view. From their living room and dining room, they had views of the University of Alaska, the airport, the City of Fairbanks, the Tanana Valley, and the Alaska Range.

There was another lot across the street from the Legoullons, between them and their view. They recognized that if a house were built there, a portion of their view could be lost. The Legoullons' living room was sunken two steps below grade, and they knew restrictive covenants in the neighborhood allowed houses as high as thirty-five feet. They considered purchasing the lot in order to protect their view, but ultimately declined to do so.

In 1994, the Kohls purchased the lot across the street from the Legoullons and began to construct a house there. A year later, they had completed a five story structure. The Legoullons describe the structure as "an imposing fortress, complete with a tower, which would look down upon all of Fairbanks." The Kohls' house substantially impairs the Legoullons' previously unobstructed views.

The Kohls began construction in June 1994. That summer, the Legoullons first became aware of the activity across the

Lance C. Parrish and James A. Parrish, Parrish Law Office, Fairbanks, for Appellants and Cross–Appellees.

William R. Satterberg, Jr., Law Offices of William R. Satterberg, Jr., Fairbanks, for Appellees and Cross–Appellants.

Before COMPTON, C.J., and RABINOWITZ, MATTHEWS, EASTAUGH, and FABE, JJ.

street. They expressed concerns to the Kohls about the potential impact on their view in a chance meeting in late September. The Legoullons left the meeting with the understanding that construction would be limited to the then-existing three stories.

In October, the Legoullons noticed that the walls of a fourth story had gone up. They wrote the Kohls on November 18, complaining the house did not comply with Montclair Subdivision's height and setback rules. Restrictive covenants in that subdivision limit dwellings to three stories or thirty-five feet in height and require they be set back at least twenty-five feet from the property line. The Kohls replied on November 22, promising they would comply with these requirements. On December 7, the Kohls also informed the Legoullons they were seeking "information from professional third parties" with regard to the relevant covenants.

The Legoullons retained an attorney, who notified the Kohls on December 13 that legal action would ensue if an amicable compromise could not be reached. The Kohls' attorney responded on January 9, 1995, that the house was not in violation of the restrictive covenants. The Legoullons' attorney wrote back on February 10 and March 9, once again threatening to commence litigation if there were no compromise. He received no response. In April, the Legoullons noticed the walls of a fifth story going up. That month, they filed an action against the Kohls seeking both declaratory and injunctive relief.

The superior court found the Kohls' house violated the setback requirement but not the height requirement. As relief, it ordered the removal of the fifth floor of the

Kohls' house. The Kohls now appeal the superior court's rulings that the Legoullons had standing to enforce the covenants in question, that the Kohls had not obtained a valid waiver of the setback requirement, and that laches is not a bar to the Legoullons' action against the Kohls. The Kohls also assert that the remedy ordered by the superior court for the setback violation, removal of the top floor of the house, is inappropriate. The Legoullons cross-appeal the superior court's determination that there was no violation of the height requirement and its refusal to award them full attorney's fees.

## III. DISCUSSION [1]

### A. Standing

The Legoullons have standing to enforce Montclair Subdivision's restrictive covenants against the Kohls. It is established that when a common grantor imposes restrictive covenants on a tract of land as part of a common plan or general scheme of development, an owner of a lot in the tract may enforce the covenants against the owner of any other lot in the tract. *Ruffinengo v. Miller*, 579 P.2d 342 (Utah 1978).[2] The Legoullons' home is located in Tract C of Montclair Subdivision. The Kohls' property is on Block 1. Tract C was included in the original plat creating Blocks 1, 2, and 3. Note 9 of the plat states, "This subdivision is subject to protective covenants recorded 6–12, 1986 at the Fairbanks Recording District, Book 481, Page 618 + 6–13–86 Bk 481 Pg. 859." Thus, it is clear that the various parcels of Montclair Subdivision are part of a common plan of development and their covenants are mutually enforceable.[3]

---

**1.** Interpretations of covenants and standing issues are questions of law so they are reviewed *de novo*. *Langdon v. Champion*, 745 P.2d 1371, 1372 n. 2 (Alaska 1987). Decisions as to the application of laches are reviewed only for clear error. *Moore v. State*, 553 P.2d 8, 15 (Alaska 1976). Factual determinations will not be disturbed unless clearly erroneous. *Klosterman v. Hickel Inv. Co.*, 821 P.2d 118, 121–22 (Alaska 1991). Awards of attorney's fees are reviewed for abuse of discretion. *Bromley v. Mitchell*, 902 P.2d 797, 804 (Alaska 1995).

**2.** The *Ruffinengo* court rejected a homeowner's argument he was immune from enforcement be-

cause the grantor had created separate subdivisions and the plaintiff's lot was not in the same one. *Id.* at 343. As long as the covenants derive from a common source and impose substantially similar requirements, the developer's artificial subdivision of the property should not be permitted to block enforcement.

**3.** The Kohls also challenge the superior court's finding there was a common plan on the basis that the developer initially considered building condominiums in the Legoullons' subdivision and the tracts' respective covenants were recorded on different (consecutive) days. These arguments are without merit. The dispositive fact is

## B. *Waiver*

The Kohls contend they have obtained a valid waiver of Montclair Subdivision's setback requirements. In July 1994, the Kohls distributed ballots and won a majority vote of all homeowners in Block 1 in favor of a setback waiver for their property. In December 1994, the Kohls also won a waiver of the setback requirement from a reconstituted Montclair Subdivision Architectural Control Committee. They contend these measures immunize them from enforcement of the setback requirement.

■ Montclair Subdivision's setback requirements for dwellings are not subject to waiver. The relevant covenant states:

No building shall be erected, placed, or altered on any lot until the construction plans and specifications and a plan showing the location of the structure have been approved by the Architectural Control Committee as to quality of workmanship and materials, harmony of external design with existing structures, and as to location with respect to topography and finished grade elevation. No fence or wall shall be erected, placed or altered on any lot nearer to any street than the minimum building set-back line unless similarly approved.

The superior court determined that this last sentence, which authorizes waivers for walls and fences, applies only to barriers and does not authorize waivers for houses. We agree. The first sentence discusses buildings, while the second sets rules for "fences and walls." By negative implication, the inclusion of "walls" in the second sentence is only a reference to barriers, not houses. The first sentence alone regulates buildings; it does not authorize waivers by the Architectural Control Committee.

■ The Kohls' block-vote waiver theory also founders on the express language of the covenants. The relevant covenants specify that they

the developer did eventually create a homogenous subdivision with tracts with substantially similar restrictions. Variations in the dates of filing or the developer's schemes do not mute the covenants' enforceability.

are to run with the land and shall be binding on all parties and all persons claiming under them for a period of twenty five (25) years from the date these covenants are recorded, after which said covenants shall be automatically extended for successive periods of ten (10) years unless instrument signed by a majority of the then owners of said lots has been recorded, agreeing to change said covenants in whole or in part.

The Montclair Subdivision covenants were recorded in 1986. By their own terms, they are not subject to modification by majority vote before 2011. The Kohls' 1994 attempted block-vote waiver of the setback requirement was thus ineffective.

## C. *Laches*

■ The Kohls also contend the Legoullons should be barred in their suit for declarative and injunctive relief from enforcing the setback covenant because they delayed unreasonably in filing suit.[4] An aggrieved party must file suit promptly once it is clear the transgressor has committed to an irrevocable course of conduct. Equity will not aid one who sits on her rights. The ultimate questions are whether and when a reasonable person would have been galvanized into legal action. *City and Borough of Juneau v. Breck*, 706 P.2d 313, 316 (Alaska 1985).

*Lamoreux v. Langlotz*, 757 P.2d 584 (Alaska 1988), provided an occasion for this court to consider application of the doctrine of laches in the context of enforcement of restrictive covenants. There we noted the "[m]ore recent decisions reflect a willingness to allow the complaining neighbor some time to pursue extra-judicial avenues of redress." *Id.* at 586. Once the neighbors have "informed the homeowner of the existence of the controversy, ... equity [does] not require them to file suit immediately." *Id.* Courts agree that a violating homeowner builds at his own risk once his neighbors have complained. *Id.* (citing *Leaver v.*

---

**4.** It is uncontested laches does not bar the Legoullons' height complaint.

**518**

*Grose*, 610 P.2d 1262, 1264 (Utah 1980); *Dickstein v. Williams*, 93 Nev. 605, 571 P.2d 1169, 1171 (1977)).

The Kohls began construction in June 1994. The Legoullons could have sued on the setback restriction at that time. As soon as the first level went up, a breach of the covenant was patent and the Legoullons could not reasonably expect it would be cured. When the Legoullons first spoke to the Kohls in September, they discussed only the height of the house. The Legoullons did not complain of a setback violation until October, when it became clear the new house would obstruct their view.

We nevertheless hold that the Legoullons' setback complaint is not barred by laches. Since the Kohls led them to believe their construction plans did not implicate their view, the Legoullons cannot be faulted for declining to immediately commence litigation. Substantial evidence supports the superior court's finding the Kohls assured the Legoullons construction would halt at three stories.[5] As late as November, the Kohls continued to promise compliance with the height covenants. Had the Kohls actually stopped at three stories, the house would not rise above Crestmont Drive and the setback violation would have no effect on the Legoullons' view.

Under these circumstances, the Legoullons acted reasonably. To apply laches here would be tantamount to holding that the Legoullons should have sued for a breach which would not have injured their interests. We think such an interpretation inequitable. The doctrine of laches should not be applied so as to require a grievant to litigate every possible claim, lest she pass over a minor infringement which later grows into a more serious intrusion upon her rights. Equity demands greater flexibility. So long as a breach remains such that a reasonable person would overlook it, and plaintiff reasonably believes it will not become otherwise, laches will not bar a claim for an ensuing substantial breach.[6]

When the Kohls' fourth floor was completed in October, the Legoullons could no longer dismiss the setback violation as de minimis. That next month, they complained to the Kohls in writing. Once the Kohls received the Legoullons' November 18 letter, they were on notice that construction was at their own risk. The Legoullons' protest was timely and barred application of laches. *Lamoreux*, 757 P.2d at 586. When the erection of a fifth floor made clear the Kohls' earlier promises could not be relied on and further attempts at negotiation would be futile, the Legoullons sued. These facts leave us no basis to conclude the superior court's determination that there was no unreasonable delay constituted clear error.

### D. *Height*

The Legoullons appeal the superior court's holding there was inadequate evidence to establish the Kohls' house violates the height restriction. Montclair Subdivision requires a "dwelling not ... exceed three above ground levels or thirty five feet in height." The covenant does not specify how height or the number of levels is to be determined. The superior court relied on Uniform Building Code (U.B.C.) definitions because these "allow for the land to be utilized to a greater extent." It then found that

> it was established at the hearings that the Kohls could potentially bring in enough fill to make the lower two levels basement levels under the U.B.C.—thus leaving only three levels "above ground"—and bring

---

5. Mrs. Legoullon testified that Mrs. Kohl had told her at the September meeting the house would not block the Legoullons' view and was now planned for only three stories. The Kohls' version of the conversation is similar, though they contend they never told the Legoullons the house would not rise into their view. The trial court is in the best position to assess the credibility of witnesses. To the extent there are conflicts in testimony, we normally defer to the superior court's resolution of such factual disputes.

6. *See* 2 Dan B. Dobbs, *Law of Remedies* § 6.4(6), at 109 (2d ed. 1993) ("[i]f the infringement is initially minor ..., delay may be reasonable and thus no bar"). *See also E–Systems, Inc. v. Monitek, Inc.*, 720 F.2d 604, 607 (9th Cir.1983) (noting exception to laches when defendant's encroachment is minimal); *Carter–Wallace, Inc. v. Procter & Gamble Co.*, 434 F.2d 794, 803 n. 4 (9th Cir.1970) ("no laches will be found where the defendant's interference with the plaintiff's rights is minimal or inconsequential").

the house within the 35–foot height requirement.

The superior court also held the Kohls' use of fill must be reasonable. Burying two stories would be reasonable if the resulting grade approximated the natural contour of the land. In regard to this issue, the superior court found that

> it was established ... that the Kohls excavated down and into the hillside in order to find stable soil on which to build, and that the foundation of the home is substantially below what was originally the natural contour of the land. No testimony was presented as to where the current grade is in relation to the natural contour of the land. The Court therefore concludes that the Plaintiffs have not established, by a preponderance of the evidence, that the Kohls' house violates the height and level restrictions of the restrictive covenants.

(Emphasis omitted.)

We affirm. The superior court correctly applied the U.B.C. definitions. As we have held previously, since limits on land use "are in derogation of the common law, ... doubts should be resolved in favor of the free use of the land." *Lamoreux*, 757 P.2d at 587.

The U.B.C. definitions allow reasonable use of fill. Since there was no proof that burying the Kohls' first two floors elevates the land around the house above its natural level, there is no evidence the Kohls' use of fill is unreasonable. The Montclair Subdivision covenants restrict only above ground levels. To show that the Kohls' five stories violate the covenants, the Legoullons needed to prove the two underground levels rise above the land's natural level. Their failure to present evidence in this regard is fatal to their claim.[7]

### E. Setbacks

■ The Kohls concede their house violates the setback restriction. As a consequence of this violation, the superior court ordered the removal of the fifth floor and the lowering of the roof. The Kohls challenge the remedy as inappropriate; they argue they should be allowed to cure the violation by converting their garage into an open porch or deck.[8] We agree.

■ An "injunction should always be so worded as not to impose on the defendant any greater restriction than is necessary to protect the plaintiff from the injury of which he complains." Henry L. McClintock, *Principles of Equity*, at 392 (1948). The Legoullons validly complain of a horizontal violation. The superior court erred by ordering a vertical remedy. Not all of the structure subject to removal under that order offends the setback covenant. To fully comply with the setback restriction, the Kohls need only remove that portion of their house above the third floor and within twenty-five feet of the property line.[9]

The Kohls also argue that even a remedy narrowly addressed to the setback violation is inequitable. They point out that removal of their garage would not restore the Legoullons' view. Since even the Kohls' proposed alternative order would not benefit the Le-

---

7. Our disposition of this issue does not require us to consider whether the use of concealment fill above the natural surface level is *per se* unreasonable.

8. In its Order Denying Motion for Reconsideration, the superior court noted:

> The Kohls argue that they should be allowed to remove the small 18′ by 12′ section closest to the front lot line and convert 8′ of the western side of the house into open porches.

(Footnote omitted.)

9. Technically, the first three floors of the Kohls' house also encroach on the twenty-five foot setback area. However, those levels are below Crestmont Drive and out of the Legoullons' line

of sight. The Kohls point out that to "prohibit invisible, underground [structures] strains common sense." Such structures could, however, interfere with drainage. This is one of the reasons communities impose setback requirements. *See infra* note 10. However, absent any indication the setback facilitated drainage in this case, we agree that the underground floors are properly excluded from the remedial order.

Our laches analysis requires the same result. We held the Legoullons' failure to object to the bottom floors did not bar setback relief as to the top two stories because a reasonable person would have overlooked the initial breach. By implication, the Legoullons' waiver of the subterranean violation bars a subsequent objection to those floors.

goullons, they conclude the appropriate remedy is no remedy at all.

If setback covenants were enforceable only when enhancing a long distance view, they would be void in many circumstances, for such restrictions do not necessarily prevent a structure from blocking the view behind it. Setback limits exist not just to protect view, but to guarantee breathing space between neighbors, and for other purposes as well.[10] Any structure is less of an affront to those nearby when it is distanced from its property line. Eliminating the Kohls' garage does not restore the Legoullons' view, but it does alleviate the impact that the Kohls' house has on the Legoullons' view.

### F. Attorney's Fees

We reject the Legoullons' challenge to the superior court's refusal to award full attorney's fees. The Legoullons argue the Kohls acted in bad faith by burying their house in order to bring it into compliance with the height covenant. The argument is without merit, since the Kohls were found not to have violated the covenant's height limitations. Thus, we conclude that the superior court did not abuse its discretion when it concluded that a case for an award of full attorney's fees had not been demonstrated.

### IV. CONCLUSION

We AFFIRM the superior court's ruling that the Legoullons had standing to enforce the Montclair Subdivision covenants against the Kohls. We also AFFIRM the superior court's holding that there was no effective waiver of the covenants, no unreasonable delay in seeking enforcement, and no violation of the height restriction. We also AFFIRM the superior court's ruling that a setback violation had occurred but conclude the rem-

edy ordered by the superior court is inappropriate. The Kohls need not remove the entire top floor of their house. Replacing the garage with an open porch or deck would bring the house into compliance with the setback restriction. We thus VACATE the remedial order and REMAND to the superior court with instructions to order the Kohls to remove that portion of their house above the third floor and within twenty-five feet of the property line.

---

10. In *Town of Portland v. Wisconsin Elec. Power Co.*, the court stated:

> [Z]oning setback and yard requirements are considered by courts to promote a variety of public purposes. They are held to relate to provision for light and air, fire protection, traffic safety, prevention of overcrowding, rest and recreation, solving drainage problems, protecting the appearance and character of a neighborhood, conserving property values, and may, in particular cases, promote a variety of aesthetic and psychological values as well as ecological and environmental interests.

*Id.*, 198 Wis.2d 775, 543 N.W.2d 559, 560–61 (App.1995) (citing 3 *The Law of Zoning and Planning* § 34B.02[2] (1995). *See also Hanna v. American Nat'l Bank and Trust*, 266 Ill.App.3d 544, 203 Ill.Dec. 507, 514, 639 N.E.2d 1326, 1333 (1994) (holding purpose of setback restriction is to create easement of unobstructed air, light, and vision and to insure uniformity of appearance).