*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@appellate.courts.state.ak.us.*

## THE SUPREME COURT OF THE STATE OF ALASKA

CLIFTON O. TWEEDY,                )
                                  )    Supreme Court No. S-15034
            Appellant,            )
                                  )    Superior Court No. 3AN-12-04609 CI
     v.                           )
                                  )    OPINION ON REHEARING
MATANUSKA-SUSITNA                 )
BOROUGH BOARD OF                  )    No. 6940 – August 15, 2014
ADJUSTMENT AND APPEALS,           )
                                  )
            Appellee.             )
_____ )

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Kevin M. Saxby, Judge.

Appearances: Ronald L. Baird, Office of Ronald L. Baird, Anchorage, for Appellant. John Aschenbrenner, Deputy Borough Attorney, and Nicholas Spiropoulos, Borough Attorney, Palmer, for Appellee.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

STOWERS, Justice.

## I.     INTRODUCTION

Clifton Tweedy began leasing property from the Matanuska-Susitna Borough on Big Lake in May 1988. The property included a house that was built in 1968 and located less than 18 feet from the lakeshore. When Tweedy assumed the lease, the existing structure was exempt from the Borough's 75-foot shoreline setback ordinance because it was constructed before any setback requirement existed. Shortly after he took possession of the property, Tweedy constructed a stairwell addition on the exterior of the house. In 2010 Tweedy applied with the Borough to purchase the property. Because structures on the property were located less than 75 feet from the shoreline, the sale required an exemption from the Borough's setback requirement. The

Borough Planning Director determined that Tweedy's addition was unlawful and that the application could not be processed until Tweedy removed it. The Matanuska-Susitna Borough Board of Adjustment Appeals affirmed the Planning Director's decision. Tweedy appealed to the superior court, which also affirmed. Because the 75-foot setback applied to Tweedy's property when he constructed the addition, the addition was unlawful when it was built and he is not entitled to an exemption. We affirm.

## II. FACTS AND PROCEEDINGS

### A. Facts

#### 1. History of the shoreline-setback requirement

In 1973 the Matanuska-Susitna Borough Assembly (Assembly) adopted a shoreline-setback ordinance that prohibited structures "closer than 75 feet from the normal high water mark of a water course or body of water in a shoreland."[1] On June 18, 1981, the Assembly reworded the setback requirement and renumbered it as MSBC 16.25.480.[2] The Assembly gave Title 16 of the Borough Code the heading "Subdivision Regulations."[3] The new setback requirement provided that "no structure or footing shall be located closer than 75 feet from the high water mark of a watercourse or body of water."[4]

The shoreline-setback ordinance did not initially contain a provision expressly exempting structures built before a setback requirement existed, but in October 1986 the Assembly adopted an exemption for structures completed prior to January 1, 1986, if the owner had no knowledge of any violation before substantially completing construction.[5] In November 1986 the Assembly reduced the setback to

---

[1]    Matanuska-Susitna Borough, Alaska, Ordinance 73-006 (July 3, 1973) (codified as former MSBC 08.45.112(b) (1973)).

[2]    Matanuska-Susitna Borough, Alaska, Ordinance 81-068 (June 18, 1981).

[3]    *Id.*

[4]    *Id.* (codified as former MSBC 16.25.480(A) (1981)).

[5]    Matanuska-Susitna Borough, Alaska, Ordinance 86-085 (Oct. 7, 1986) (codified as former MSBC 16.25.480(C) (1981)).

45 feet,[6] but a 1987 ballot initiative returned the setback to 75 feet.[7] In March 1987 the Assembly extended the exemption from the setback requirement to apply to structures completed before January 1, 1987.[8]

In September 1988 the Assembly repealed and replaced Title 16 and added a chapter to Title 17 entitled "Setbacks and Screening Easements."[9] The effect of this enactment was to move the 75-foot setback requirement from Title 16 to Title 17 as MSBC 17.55.020.[10] The relevant language of MSBC 17.55.020(A) is identical to that of former MSBC 16.25.480(A).[11] MSBC 17.55.020(C) maintains the exemption for construction completed prior to January 1, 1987.

### 2. Tweedy's property

The home on Lot 6B, Block 1, South Big Lake Addition was originally built in 1968. The house on the lot sits just 17.6 feet from the shore of Big Lake. On March 25, 1988, North American Savings and Loan Association, which preceded Tweedy as lessee, applied for an exemption from the setback requirements then contained in MSBC 16.25.480. The application included an as-built drawing showing the dimensions of the existing residence. The Matanuska-Susitna Borough Chief of Code Compliance approved an exemption from the shoreline setback for the structure, concluding that "it is my determination that the waterbody setback requirements of [MSBC] 16.25.480 do not apply to the structure(s) set out in this application." Presumably the Chief of Code Compliance approved the exemption on the grounds that

---

[6] Matanuska-Susitna Borough, Alaska, Ordinance 86-101 (Nov. 4, 1986).

[7] Matanuska-Susitna Borough, Alaska, Setback & Public Easement Initiative Areawide (May 5, 1987).

[8] Matanuska-Susitna Borough, Alaska, Ordinance 87-024 (Mar. 17, 1987).

[9] Matanuska-Susitna Borough, Alaska, Ordinance 88-190 (Sept. 6, 1988).

[10] *Id.*

[11] MSBC 17.55.020(A) provides that "no structure or footing shall be located closer than seventy-five feet from the highwater mark of a watercourse or body of water." Former MSBC 16.25.480(A) differs only by rendering "seventy-five" in numerals: "75."

the house was constructed before January 1, 1987, and North American had no knowledge of violating any setback requirements prior to any construction it completed.[12]

Tweedy assumed the lease of the property on May 11, 1988. Sometime shortly after taking possession, Tweedy constructed an exterior stairwell addition measuring six by eight by ten feet on the north side of the house. In 2010 Tweedy applied to purchase the property and its improvements from the Borough through a fee-simple purchase option available to him under his lease. Because the house was located less than 75 feet from the lakeshore, the sale required a setback exemption. As part of his application to purchase the property, Tweedy submitted another as-built drawing showing the dimensions of the structures on the property as of July 20, 2010. The 2010 as-built drawing showed several structural additions, including the stairwell addition. The Borough sent a letter to Tweedy in October 2010 informing him that the additions on his property were not compliant with shoreline-setback requirements.

In January 2011 Tweedy went to the Borough planning office and spoke with Susan Lee, the planner who reviewed his as-built survey, and Robert Guertin, the Chief of Code Compliance. They discussed the additions to the property and compliance with setbacks, and Guertin and Lee requested that Tweedy submit written documentation of additions to the property. Tweedy agreed to provide documentation and to move or remove certain additions, including an outhouse and fuel tank, to bring them into compliance.

Tweedy submitted documentation showing that he constructed the stairwell addition on the north side of the house sometime after the first survey was submitted in 1988. Lee informed Tweedy that the stairwell addition was not compliant with MSBC 17.80.060(A)(1), which provides that "a nonconforming structure may not be enlarged or altered in any way unless the alteration or enlargement is otherwise specifically allowed by code," and MSBC 17.80.060(A)(2), which provides that "a nonconforming structure may not be enlarged or altered vertically or horizontally, in a way which would increase the height, width, depth, area, or volume of the structure

---

[12]     *See* former MSBC 16.25.480(C).

except as specifically allowed by current code for similar new structures in that location." She further informed him that the stairwell was not eligible for a shoreline-setback exemption because it was not constructed before January 1, 1987. The Borough Planning Director issued a final administrative determination making the same findings.

## B. Proceedings

Tweedy appealed the Planning Director's determination to the Matanuska-Susitna Borough Board of Adjustment Appeals (Board), and in December 2011 the Board affirmed the Planning Director's decision. The Board relied on MSBC 17.80.060(A)(2) and the "long standing interpretation of code that legal nonconforming structures may be maintained, but not enlarged in ways that are prohibited for new structures in the same location." The Board concluded that the structure was "not eligible for any type of nonconforming determination due to the date it was constructed."

Tweedy appealed the Board's decision to the superior court. He argued that: (1) the stairwell was a legal, nonconforming use under MSBC 17.80; (2) former MSBC 16.25.480 did not apply to his property because the property was platted prior to the effective date of that provision; (3) MSBC 17.55.020 could not be applied retroactively to improvements constructed prior to the date that ordinance was passed; and (4) if MSBC 17.55.020 applies, it violates due process and is an unconstitutional taking of property.

The superior court concluded that former MSBC 16.25.480 applied to Tweedy's property. The court explained that the ordinance on its face applied to property in all subdivisions, not only to construction in new subdivisions. The court further concluded that because the 75-foot setback requirement was in effect when Tweedy took possession of the property and built the stairwell, the addition violated the setback provision and the provision against expanding noncomplying structures and did not qualify for an exemption. The superior court also concluded that because the setback requirement was already in effect when Tweedy built the stairwell, there was no issue of retroactive application of an ordinance and no uncompensated taking. Finally, the

court concluded that the shoreline setback ordinance does not violate substantive due process because it is reasonably related to a legitimate government purpose.

## III. STANDARDS OF REVIEW

"When the superior court acts as an intermediate appellate court, we independently review the merits of the underlying administrative decision."[13] Because of a zoning board's expertise in administering zoning ordinances, "[w]e ordinarily give great weight to a zoning board's interpretation of its own zoning code and accept its interpretation when the board supplies a reasonable basis for it."[14] But when, as is the case here, we are presented with a question of law that does not involve the Board's expertise, we exercise our independent judgment,[15] "adopt[ing] the rule of law that is most persuasive in light of precedent, reason, and policy."[16]

We interpret statutes, including municipal ordinances,[17] "according to reason, practicality, and common sense, considering the meaning of the statute's language, its legislative history, and its purpose."[18] "[T]he plainer the language of the

---

[13] *Heller v. State, Dep't of Revenue*, 314 P.3d 69, 72 (Alaska 2013).

[14] *Pruitt v. City of Seward*, 152 P.3d 1130, 1139 (Alaska 2007) (quoting *S. Anchorage Concerned Coal., Inc. v. Coffey*, 862 P.2d 168, 173 n.12 (Alaska 1993)) (internal quotation marks omitted). This standard applies to both planning commission and board of adjustment decisions. *Balough v. Fairbanks N. Star Bor.*, 995 P.2d 245, 254 (Alaska 2000) (noting that both Planning Commission and Board of Adjustment decisions are entitled to a "presumption of validity").

[15] *Pruitt*, 152 P.3d at 1139 (citing *Griswold v. City of Homer*, 55 P.3d 64, 68 (Alaska 2002)).

[16] *Gillis v. Aleutians E. Bor.*, 258 P.3d 118, 120 (Alaska 2011).

[17] *See City of Skagway v. Robertson*, 143 P.3d 965, 970 (Alaska 2006) (applying rule to interpretation of a municipal ordinance).

[18] *McDonnell v. State Farm Mut. Auto. Ins. Co.*, 299 P.3d 715, 721 (Alaska 2013) (quoting *Nelson v. Municipality of Anchorage*, 267 P.3d 636, 639 (Alaska 2011)) (internal quotation marks omitted).

statute, the more convincing any contrary legislative history must be . . . to overcome [its] plain meaning."[19]

## IV. DISCUSSION

Tweedy's main argument is that the shoreline-setback requirement in former MSBC 16.25.480 was a subdivision regulation that did not apply to his property because his land was subdivided before the ordinance was enacted. He further argues that because no shoreline setback applied to his property when he constructed the stairwell, the current shoreline-setback requirement of MSBC 17.55.020 was improperly applied retroactively to his stairwell addition, and that this retroactive application violated substantive due process or was an unconstitutional taking. Each of these latter arguments is based on the premise of Tweedy's main argument: that no shoreline-setback requirement prohibited the stairwell at the time it was constructed. Because we conclude that the shoreline-setback requirement in former MSBC 16.25.480 *did* apply to Tweedy's property when he constructed his stairwell, the stairwell was unlawful when it was constructed. Thus, the current code was not applied retroactively, there was no taking or violation of due process, and the addition was not from the shoreline-setback requirement.

### A. Former MSBC 16.25.480 Applied To Tweedy's Property When He Constructed The Stairwell Addition.

Tweedy argues that former MSBC 16.25.480, which required a 75-foot setback from the high water mark of a water course or body of water, did not apply to his property because the ordinance was a subdivision or platting regulation, not a zoning ordinance. Tweedy asserts that because MSBC 16.25.480 was a subdivision regulation, it only governed the process of subdividing land and could not apply to construction on property within a preexisting subdivision, especially where the subdivision was platted prior to the regulation's enactment.[20] The Borough responds that the setback ordinance

---

[19]     *Oels v. Anchorage Police Dep't Emps. Ass'n*, 279 P.3d 589, 595-96 (Alaska 2012) (quoting *Peninsula Mktg. Ass'n v. State*, 817 P.2d 917, 922 (Alaska 1991)) (omission in original).

[20]     Tweedy's lot was created by a subdivision of state land in 1966; former (continued...)

was a zoning ordinance of general application regardless of where the ordinance was located in the code.  Because former MSBC 16.25.480 applied to all construction on subdivided property regardless of when the subdivision was created, it applied to Tweedy's property, and Tweedy's stairwell addition was unlawful when it was constructed.

> Former MSBC 16.25.480(A) provided:
>
> Except as provided in B and C of this section no structure or footing shall be located closer than 75 feet from the high water mark of a watercourse or body of water.

The language of this ordinance, considered in the context of former MSBC Title 16 as a whole, does not create an exception from the shoreline-setback requirement for construction in preexisting subdivisions.  Former MSBC 16.05.020 provided that Title 16 governed "all subdivisions within the Borough."[21]  Tweedy cites the definition of "subdivision" in former MSBC 16.05.040(B)(22):  "the division of a tract or parcel of land into two or more lots, sites or other divisions."[22]  He argues that this definition means that the regulations in Title 16 governed only prospective applications to subdivide land.  But the word "subdivision" also commonly means "[a]n area of real estate subdivided into individual lots."[23]  It is clear that, though only the process of subdivision is defined, former Title 16 uses both meanings of the word.  For example, former MSBC 16.25.020(B) refers to "[c]onstruction of improvements within subdivisions," and former MSBC 16.25.100 references access to subdivisions.[24]  These uses clearly reference subdivisions as geographic places.  Similarly, the language of

---

[20](...continued)
MSBC 16.25.480 was enacted in 1981.

[21]    Matanuska-Susitna Borough, Alaska, Ordinance 81-068 (June 18, 1981).

[22]    *Id.*

[23]    THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 1735 (5th ed. 2011); *see also* BLACK'S LAW DICTIONARY 1560 (9th ed. 2009) (defining "subdivision" as *both* "[t]he division of a thing into smaller parts" *and* "[a] parcel of land in a larger development").

[24]    Matanuska-Susitna Borough, Alaska, Ordinance 81-068 (June 18, 1981).

former MSBC 16.25.480 appears to regulate building within a physical subdivision, not the initial process of subdividing land.[25] Because Title 16 included ordinances that governed the use of land within subdivisions, it makes little sense to conclude that Title 16 governed only the process of subdividing land. The more logical interpretation is that ordinances within former Title 16 that regulated the process of subdividing land governed prospective applications to subdivide land, and ordinances that regulated the use of subdivided land applied to all land within subdivisions, regardless of when the subdivision was created.

Furthermore, subdivision regulations and zoning ordinances are not mutually exclusive categories,[26] and neither the state legislature nor the Borough Assembly has defined any discrete boundary between municipal zoning and subdivision or platting authority.[27] The application of a particular ordinance depends on the language and purpose of that ordinance, not what nominal category it is placed into. In this case, whether one calls it a zoning ordinance or a subdivision regulation, it is clear that former MSBC 16.25.480 governed how close to a body of water a property owner could build a structure on subdivided land.

Moreover, the argument that the setback is ineffective because it is in a code section titled "Subdivision Regulations" is unavailing. The title of a statutory provision or code section can be an interpretive tool, but it is only relevant where legislative meaning is left in doubt.[28] As discussed above, the plain language of former MSBC 16.25.480 leaves no doubt that it is generally applicable to all new construction.

---

[25] *Id.*

[26] *See* 5 EDWARD H. ZIEGLER, JR., RATHKOPF'S THE LAW OF ZONING AND PLANNING § 89:4 (4th ed. 2012) (discussing the differences in the principal purposes of "zoning restrictions" and "subdivision regulations," but observing that there is considerable overlap between the categories).

[27] *See* AS 29.40.010-200; MSBC 17.52-56.

[28] *Boyd v. State*, 210 P.3d 1229, 1232 (Alaska 2009) ("[U]nder the rules of statutory construction, where the meaning of a statute or regulation is clear and unambiguous, a court will not consider the heading of the statute or regulation.").

Further, requiring municipal ordinances to strictly conform with our interpretation of the definition of a code section or ordinance title would be inconsistent with the principle that municipal regulatory power should be liberally construed.[29]

A shoreline-setback ordinance also fits within the stated purposes of former MSBC Chapter 16. The purposes listed for former Chapter 16 were:

> 1. To implement the Borough's areawide platting power under AS 29.33.15.
>
> 2. To promote and protect the public health, safety and welfare; to provide for the proper arrangement of roads and streets in relation to existing or proposed roads and streets; to provide for adequate, useful and convenient open spaces; to provide for the efficient movement of vehicular, pedestrian and other modes of transportation; to assure adequate and properly placed utilities; to provide access for firefighting apparatus; to provide recreation, light and air, and to avoid population congestion; to facilitate the orderly and efficient layout and use of the land.[30]

Tweedy suggests that the first enumerated purpose demonstrates that the ordinances within former MSBC Chapter 16 were limited to directly implementing the Borough's platting authority. But a shoreline-setback ordinance is clearly consistent with the second enumerated purpose. The setback provision can easily be characterized as serving the purposes of providing open space, recreation, and avoiding congestion.[31]

---

[29] Alaska Const. art. X, § 1; AS 29.35.400.

[30] Matanuska-Susitna Borough, Alaska, Ordinance 81-068 (June 18, 1981) (codified as former MSBC 16.05.015(A) (1981)).

[31] We have not directly addressed the purpose of shoreline-setback provisions, but in a case concerning a boundary-line-setback covenant, we held that setback requirements generally serve a number of purposes. *Kohl v. Legoullon*, 936 P.2d 514, 520 (Alaska 1997). There, we quoted with approval a Wisconsin court's description of the broad purpose of setback provisions:

> [Z]oning setback and yard requirements are considered by courts to promote a variety of public purposes. They are held to relate to provision for light and air, fire protection, traffic safety, prevention of overcrowding, rest and recreation,

(continued...)

Tweedy also argues that the superior court and the Board erred by relying on the 1987 initiative that restored the shoreline setback to 75 feet. We recently held that because of the statutorily required role of a planning commission, "zoning by initiative is invalid."[32] We have not considered whether to apply this holding retroactively. But we do not need to answer that question here because, even if the ballot initiative restoring the setback to 75 feet was unlawful, the setback would have been 45 feet under the November 1986 ordinance that the initiative was intended to change.[33] Any expansion of the house on Tweedy's property, which is only 17.6 feet from the lakeshore, would be unlawful under a either a 75-foot or a 45-foot setback.

## B.    The Board Did Not Apply MSBC 17.55.020 Retroactively.

Tweedy argues that the Board erred by giving MSBC 17.55.020 retroactive application to January 1, 1987, when it was not passed until September 6, 1988. This argument is based on the premise that there was no setback provision applicable to Tweedy's property before the Assembly passed MSBC 17.55.020. But as discussed above, former MSBC 16.25.480 *did* apply to Tweedy's property. The Assembly simply moved the 75-foot setback requirement from MSBC 16.25.480(A) to MSBC 17.55.020(A), using identical language.[34]

---

[31](...continued)
> solving drainage problems, protecting the appearance and character of a neighborhood, conserving property values, and may, in particular cases, promote a variety of aesthetic and psychological values as well as ecological and environmental interests.

*Id*. at 520 n.10 (alteration in original) (quoting *Town of Portland v. Wis. Elec. Power Co.*, 543 N.W.2d 559, 560-61 (Wis. App. 1995)).

[32]    *Carmony v. McKechnie*, 217 P.3d 818, 821 (Alaska 2009) (quoting *Griswold v. City of Homer*, 186 P.3d 558, 563 (Alaska 2008)) (internal quotation marks omitted).

[33]    Matanuska-Susitna Borough, Alaska, Ordinance 86-101 (Nov. 4, 1986).

[34]    *See* Matanuska-Susitna Borough, Alaska, Ordinance 81-068 (June 18, 1981); Matanuska-Susitna Borough, Alaska, Ordinance 88-190 (Sept. 6, 1988).

(continued...)

**C. The Setback Requirement Is Not Unconstitutional As Applied To Tweedy's Property.**

Tweedy argues that MSBC 17.55.020 is facially unconstitutional and unconstitutional as it is applied to his property because it does not allow for legal, nonconforming structures. He argues that the ordinance violates substantive due process and is an unconstitutional taking of property without compensation. Because the setback provision was in place when Tweedy took possession of the property on May 11, 1988, and because the code does allow for nonconforming structures, the setback provision could not deprive him of any right or property interest, and the ordinance as applied to Tweedy does not violate any constitutional provision.

**1. Due Process**

Tweedy does not allege a violation of procedural due process; rather, he appears to argue that by not including a provision for nonconforming uses, MSBC 17.55.020 (and presumably former MSBC 16.25.480 if it applied to him) violates substantive due process.

"A legislative body's zoning decision violates substantive due process if it has no reasonable relationship to a legitimate government purpose."[35] We have held that a person who has a legal, nonconforming land use has a vested property right that

---

[34](...continued)

Tweedy's assertion that MSBC 17.55.020's setback provision is inapplicable because the setback requirment was located in former MSBC 16.25.480 when he constructed the stairwell is without merit. MSBC 17.55.020(C) provides that "[t]his section does not apply to structures where construction was completed prior to January 1, 1987 if the present owner or owners of the property had no personal knowledge of any violation of the requirements of this section prior to substantial completion of the structures." "[T]he requirements of this section" references the requirements included in the section even when they were previously located elsewhere in the code. Because there was no MSBC 17.55.020 prior to September 6, 1988, an alternate interpretation would render subsection C entirely superfluous. Further, whether the exemption applies to the requirements included in former MSBC 16.25.480 is irrelevant because Tweedy constructed the stairwell after January 1, 1987, but while former MSBC 16.25.480 was still in effect; the construction was unlawful in either case.

[35] *Griswold*, 925 P.2d at 1019 (holding that zoning amendment to allow motor vehicle sales in a small area of the City of Homer was related to a legitimate government purpose and did not violate substantive due process).

may not be deprived without due process.[36] A nonconforming use is "a use which lawfully existed prior to the enactment of a zoning ordinance, and which is maintained after the effective date of the ordinance, although it does not comply with the zoning restrictions applicable to the area in which it is situated."[37]

The setback requirement and the lack of a provision to allow for the expansion of existing nonconforming structures are both reasonably related to legitimate government purposes. The 1987 ballot initiative stated that the purposes of the setback requirement were to "maintain fisheries, protect water quality, and maintain public access to water,"[38] and, as discussed above, the requirement may be characterized as serving a number of other purposes, including providing for open space, recreation, and avoiding congestion.[39] Prohibiting expansion of nonconforming structures serves the same interests. These purposes are expressly within the government's power under article VIII, sections 2, 3, 4, 14, and 17 of the Alaska Constitution.

Current MSBC 17.55.020 and former MSBC 16.25.480 expressly allow nonconforming status for structures completed prior to January 1, 1987. In fact, the Borough gave the house on Tweedy's property legal, nonconforming status in 1988. Further, MSBC 17.80.020 gives legal, nonconforming status to "structures built lawfully and made nonconforming by adoption of subsequent ordinances." MSBC 17.55.020 does not, as Tweedy contends, require "immediate cessation of a nonconforming use";

---

[36] *Balough v. Fairbanks N. Star Bor.*, 995 P.2d 245, 262 (Alaska 2000) (holding that junkyard owner had vested right to operate junkyard after zoning change made that land use unlawful). This is consistent with the general rule in other jurisdictions. *See* 4 ZIEGLER, *supra* note 26, at § 72:2.

[37] *Balough*, 995 P.2d at 261 (quoting *Earth Movers of Fairbanks, Inc. v. Fairbanks N. Star Bor.*, 865 P.2d 741, 742 n.1 (Alaska 1993)).

[38] Matanuska-Susitna Borough, Alaska, Setback & Public Easement Initiative Areawide (May 5, 1987).

[39] *See* Matanuska-Susitna Borough, Alaska, Ordinance 81-068 (June 18, 1981) (codified as former MSBC 16.05.015(A) (1981)); *Kohl v. Legoullon*, 936 P.2d 514, 520 (Alaska 1997) (quoting *Town of Portland v. Wis. Elec. Power Co.*, 543 N.W.2d 559, 560-61 (Wis. App. 1995)).

it simply requires cessation of unlawful uses. Accordingly, the ordinance does not violate substantive due process.[40]

### 2. Takings

Article I, section 18 of the Alaska Constitution provides that "[p]rivate property shall not be taken or damaged for public use without just compensation." But a taking can only occur where a private property interest exists.[41] When Tweedy took possession of his property on May 11, 1988, there was a 75-foot shoreline-setback provision in effect that prohibited him from expanding the existing structures on his property. Because Tweedy never had any lawful property interest in expanding the structures on his property within 75 feet of the lakeshore, we need not consider his claim that the setback provision constituted a taking. Enforcing the setback provision with regard to Tweedy's stairwell construction did not deprive him of any property interest, thus it was not a taking.

### D. The Board Did Not Err By Failing To Grant An Exemption.

Tweedy argues that the Board erred by concluding that his stairwell was not a legal, nonconforming structure. The Board concluded that in order to be eligible for a shoreline-setback exemption, Tweedy needed to produce evidence showing that he constructed the stairwell before January 1, 1987. The Board's conclusion is correct.

MSBC 17.80.020 gives legal, nonconforming status to "structures built lawfully and made nonconforming by adoption of subsequent ordinances." MSBC 17.80.060(A)(2) provides that:

> A nonconforming structure may not be enlarged or altered vertically or horizontally, in a way which would increase the height, width, depth, area, or volume of the structure except as specifically allowed by current code for similar new

---

[40] We also observe that because Tweedy's stairwell addition was unlawful when it was constructed, he had no vested right to keep the stairwell, and the Board's application of the setback requirement to his property does not raise any procedural due process issues.

[41] *See Philips v. Wash. Legal Found.*, 524 U.S. 156, 163-172 (1998) (considering whether "interest income generated by funds held in IOLTA accounts is private property for purposes of the Fifth Amendment's Takings Clause").

> structures in that location. A nonconforming structure which straddles a required minimum setback line may be expanded vertically or horizontally only where the expansion is located outside the minimum setback distance.

MSBC 17.55.020(C) exempts construction completed prior to January 1, 1987 from the shoreline-setback requirement, as long as the owner was unaware of the setback violation.

As we have discussed, the 75-foot shoreline-setback requirement applied when Tweedy constructed his stairwell addition. The Borough recognized Tweedy's house's legal, nonconforming status in 1988, but the subsequent addition was plainly prohibited by former MSBC 16.25.480. And because no evidence suggests that the stairwell addition was constructed before January 1, 1987, it is not eligible for an exemption under MSBC 17.55.020(C).

## V.    CONCLUSION

For the reasons discussed, we AFFIRM the judgment of the superior court.

# In the Supreme Court of the State of Alaska

**Clifton O. Tweedy**,                                )
                                                     )        Supreme Court No. **S-15034**
                        Appellant,                    )
                                                     )
            v.                                        )        **Order**
                                                     )        Petition for Rehearing
**Matanuska-Susitna Borough**                         )
**Board of Adjustment and Appeals**,                  )
                                                     )
                        Appellee.                     )        Date of Order: **August 15, 2014**
                                                     )
_____            )

Trial Court Case # **3AN-12-04609CI**

> Before:      Fabe, Chief Justice, Winfree, Stowers, Maassen, and
>              Bolger, Justices

On consideration of Appellant's Petition for Rehearing filed June 27, 2014 and Appellee's response filed on July 14, 2014,

**IT IS ORDERED**:

1.      The Petition for Rehearing is **GRANTED**.

2.      Opinion No. 6917, issued on June 20, 2014, is **WITHDRAWN**.

3.      Opinion No. 6940, is issued on this date in its place.

The Opinion on Rehearing deletes references to "variance" but retains references to "exemption" with regard to the shoreline-setback.  See Opinion on Rehearing at pages 2, 5, 9, 17, and 18.

Entered at the direction of the court.

                                            Clerk of the Appellate Courts


                                            /s/
                                            _____
                                            Marilyn May

cc:     Supreme Court Justices
        Publishers

Distribution:

      Ronald L Baird
      Law Offices of Ronald L Baird
      PO Box 112070
      Anchorage AK 995112070

      John L Aschenbrenner
      Deputy Borough Attorney
      350 E Dahlia Ave
      Palmer AK 99645