TOWN OF PORTLAND, and Dodge County, Plaintiffs-Respondents,†

v.

WISCONSIN ELECTRIC POWER COMPANY, Defendant-Appellant.††

Court of Appeals

*No. 93–0847. Submitted on briefs December 3, 1993.—Decided December 21, 1995.*

(Also reported in 543 N.W.2d 559.)

†Petition for cross review denied.
††Petition to review denied.

For the defendant-appellant the cause was submitted on the briefs of *James H. Baxter III* of *Quarles & Brady* of Milwaukee.

For the plaintiffs-respondents the cause was submitted on the brief of *Robert M. Hesslink, Jr.* and *Natalie M. King* of *Hesslink Law Offices, S.C.* of Verona.

Before Dykman, Sundby and Brown, JJ.

SUNDBY, J.   The appellant electric power utility, Wisconsin Electric Power Company (WEPCO), appeals from an order denying its claim against Dodge County for its cost of relocating its utility structures from the Town of Portland's highway setback. We affirm that

part of the order denying WEPCO's claim for the cost of relocating the utility's aboveground structures, but reverse the order insofar as it denies WEPCO's claim to recover the cost of relocating its underground structures.

While WEPCO presents a number of reasons why the County must compensate it for relocating its utility structures, we identify two dispositive issues:

> (1)   Could the Town condition occupation of its highway setback by WEPCO's overhead utility structures upon WEPCO's agreement that it would remove such structures at its expense when necessary for improvement of the highway? We conclude that it could.
>
> (2)   Does § 5.12(3) of the Town's highway setback ordinance except WEPCO's underground structures from the requirement that WEPCO agree to pay the cost of relocating its utility structures when necessary for improvement of the highway? We conclude that § 5.12(2) of the Town's setback zoning ordinance requires a removal agreement only as to WEPCO's aboveground utility structures.

In 1990, Dodge County widened and rebuilt County Trunk Highway I (CTH I) in the Town of Portland. The County owns the right-of-way in fee simple. WEPCO concedes that it could have located its utility structures in the highway right-of-way and would have been liable for the cost of relocation, upon order of the County; however, it acquired easements in the highway setback, and between 1978 and 1983, located its aboveground and underground structures in the setback area to avoid the cost of relocating its structures if the highway was improved.

777

In the trial court, there was some jousting as to whether the highway setback was imposed by the Dodge County Zoning Ordinance or the Town of Portland Zoning Ordinance. The parties now agree that the Portland Zoning Ordinance applies. Section 5.11, Town of Portland Zoning Ordinance (PZO), prohibits new signs, new buildings or other new structures between the setback line and the highway. However, § 5.12 provides in part:

> The following kinds of structures may be placed between the setback line and the highway:
>
> 1) Open fences.
>
> 2) Telephone, telegraph and power transmission poles and lines and microwave radio relay structures may be constructed within the setback lines, and additions to and replacements of existing structures may be made, provided the owner will file with the Town of Portland an agreement in writing to the effect that the owner will remove all new construction, additions and replacements erected after the adoption of this Ordinance at his expense, when necessary for the improvement of the highway.
>
> 3) Underground structures not capable of being used as foundations for future prohibited overground structures.

WEPCO did not file with the Town an agreement to relocate its utility structures.

WEPCO does not challenge the Town's authority to require setbacks from Town highways within which buildings and other structures may not encroach. The validity of such restrictions is firmly established. Rathkopf states that:

Today, zoning setback and yard requirements are considered by courts to promote a variety of public purposes. They are held to relate to provision for light and air, fire protection, traffic safety, prevention of overcrowding, rest and recreation, solving drainage problems, protecting the appearance and character of a neighborhood, conserving property values, and may, in particular cases, promote a variety of aesthetic and psychological values as well as ecological and environmental interests.

3 THE LAW OF ZONING AND PLANNING § 34B.02[2] (1995). In 1928, the Wisconsin Supreme Court stated:

The contention that the setback provision of the zoning ordinance . . . is unconstitutional and invalid, on the grounds that it violates the "due process" and equal protection clauses of the federal constitution, is not tenable.

*Bouchard v. Zetley*, 196 Wis. 635, 645, 220 N.W. 209, 213 (1928). The court relied on *Gorieb v. Fox*, 274 U.S. 603, 608 (1927), where the Court said:

The remaining contention is that the ordinance, by compelling petitioner to set his building back from the street line of his lot, deprives him of his property without due process of law. Upon that question the decisions are divided, as they are in respect of the validity of zoning regulations generally. But, after full consideration of the conflicting decisions, we recently have held (*Euclid v. Ambler Realty Co.*, 272 U.S. 365, *ante*, 303, — A.L.R. —, 47 Sup. Ct. Rep. 114), that comprehensive zoning laws and ordinances, prescribing, among other things, the height of buildings to be erected (*Welch v. Swasey*, 214 U.S. 91, 53 L. ed. 923, 29 Sup. Ct. Rep. 567) and the extent of the area to be left open for light and air and in aid of fire protection, etc., are, in their general scope, valid under the Federal Consti-

tution. It is hard to see any controlling difference between regulations which require the lot owner to leave open areas at the sides and rear of his house and limit the extent of his use of the space above his lot and a regulation which requires him to set his building a reasonable distance back from the street. Each interferes in the same way, if not to the same extent, with the owner's general right of dominion over his property. All rest for their justification upon the same reasons which have arisen in recent times as a result of the great increase and concentration of population in urban communities and the vast changes in the extent and complexity of the problems of modern city life. *Euclid v. Ambler Realty Co., supra,* p. 386. State legislatures and city councils, who deal with the situation from a practical standpoint, are better qualified than the courts to determine the necessity, character and degree of regulation which these new and perplexing conditions require; and their conclusions should not be disturbed by the courts unless clearly arbitrary and unreasonable. *Zahn v. Board of Public Works,* 274 U.S. 325, *ante,* 1074, 47 Sup. Ct. Rep. 594, and authorities cited. (Decided May 16, 1927.)

WEPCO argues, however, that § 5.12(2), PZO, makes clear that the only reason the Town prohibits transmission poles and lines in the highway setback area is to hold down the cost of acquiring additional right-of-way for future highway expansions. It contends that this is not a legitimate police power purpose. We conclude that § 5.12(2) does not establish such purpose; WEPCO's argument is speculative. WEPCO relies on *State ex rel. Tingley v. Gurda,* 209 Wis. 63, 69-70, 243 N.W. 317, 320 (1932), where the court held that a city could not use its police power to depress the value of property which it might on some future occasion

wish to take by eminent domain. In *Tingley*, after the city annexed the block containing plaintiff's property, it rezoned the property residential even though it was "absolutely surrounded by property devoted to uses incompatible with and repugnant to a use for residential purposes." *Id.* at 69, 243 N.W. at 320. The city, in effect, took plaintiff's property without just compensation. That is not the case here.

Section 5.12(2), PZO, does not prohibit utility lines and poles in the setback area; in fact, it allows them if the utility agrees to remove them at its cost if that should become necessary upon improvement of the highway. Section 5.12 was enacted in 1971, long before the widening of CTH I was dreamed of in any highway engineer's imagination. We see no reason why a municipality should deny its residents the benefits of open space and highway safety simply because at some future date the highway may be improved. The Town could have excluded WEPCO from the setback area and forced it to use the highway right-of-way where it would have been required by state and common law to bear the expense of relocation if improvement of CTH I became necessary. WEPCO should encourage the municipalities through which it must pass to allow it to place its structures in highway setbacks. That policy could postpone when WEPCO would have to relocate its utility structures if the highway widening could be done without taking the area in which it has placed its lines and poles. Further, by staying out of the right-of-way, WEPCO would contribute to highway safety and esthetics.

However, § 5.12(3), PZO, does not require the utility to file with the Town an agreement to remove underground structures when necessary for the improvement of the highway. Section 5.12 provides in

781

part: "The following kinds of structures may be placed between the setback line and the highway: . . . 3) Underground structures not capable of being used as foundations for future prohibited overground structures." WEPCO has not agreed, and was not required as a condition of occupying the setback area to agree, to remove the underground structures at its expense, when necessary for the improvement of CTH 1. In the absence of a relocation agreement, WEPCO's underground structures are located where neither the County nor the Town may require their removal without paying just compensation for their taking. *See* WIS. CONST. art. I, § 13. The Town's failure to require a utility to file a relocation agreement for its underground structures may have been a drafting error but we cannot by judicial construction supply language to express what the Town Board may have intended. The Town Board may have had good reasons for treating underground structures different from aboveground structures.

We therefore conclude that the Town or County could not require WEPCO to remove its underground utility structures at its cost. How WEPCO may enforce its claim for just compensation for that cost is not before us.

*By the Court.*—Order affirmed in part and reversed in part.