WISCONSIN ELECTRIC POWER COMPANY
d/b/a WE Energies, Plaintiff-Appellant,

v.

OUTAGAMIE COUNTY, Defendant-Respondent.

Court of Appeals

*No. 2007AP1315. Submitted on briefs February 19, 2008.
—Decided April 8, 2008.*

2008 WI App 75

(Also reported in 752 N.W.2d 388.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Thomas B. Hartley* of *Guttormsen, Hartley, Wilk & Higgins, LLP* of Kenosha.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Richard J. Carlson* of *Silton, Seifert, Carlson & Gamble, S.C.* of Appleton.

Before Hoover, P.J., Peterson and Brunner, JJ.

¶ 1. BRUNNER, J. Wisconsin Electric Power Company, d/b/a WE Energies (WEPCO), appeals a summary judgment dismissing its claims against Outagamie County. Those claims revolved around WEPCO's private easement rights along a county highway and the costs of relocating its utility lines to accommodate a highway expansion. We affirm.

## BACKGROUND

¶ 2. In the 1930s and 1950s, WEPCO obtained private easement rights from landowners to run utility lines along County Highway S in the Town of Liberty,

Outagamie County. The lines were located thirty-four feet from the centerline of the highway, just outside the highway right-of-way.

¶ 3. In 1964, the Town of Liberty adopted a County zoning ordinance that included what is now OUTAGAMIE COUNTY, WI, ORDINANCE § 17.40(3)(g) (1992):

> Telephone, television, natural gas and power transmission lines may be constructed within the setback lines and additions to and replacements of existing lines may be made, provided that the utility owner first file with the County an agreement in writing that they will remove at their expense all new lines, additions and replacements constructed after the effective date of this paragraph, when such removal is necessary for the improvement of the highway.

Following the adoption of this ordinance, in 1966, WEPCO replaced its utility lines along the highway, placing the new lines in the same approximate location as the old ones, outside the right-of-way, but within the setback area.[1] However, WEPCO never filed an agreement to pay relocation costs as required by the ordinance.

¶ 4. In 2004, the County advised WEPCO of its plan to expand Highway S and that WEPCO's utility lines would need to be moved to a new location within the right of way at WEPCO's expense. The County also began acquiring lands necessary to expand its right-of-way.

¶ 5. On January 25, 2005, WEPCO executed a document entitled "Conveyance of Rights in Land,"

---

[1] Before the circuit court, the parties disputed how many of WEPCO's utility poles were actually in the setback area and how many were within the right-of-way. However, they agree that, for the purposes of this appeal, it is irrelevant how many poles may have been within the right-of-way.

which purported to convey its private easements rights to the County and was recorded with the Outagamie County Register of Deeds.[2] That conveyance document included the following language:

> The grantor reserves to itself the right to cross, traverse, or otherwise occupy these lands with the present and future overhead or underground transmission lines and appurtenant facilities and supporting structures in a manner . . . which will not interfere with normal highway maintenance and operation, *provided, however, that the costs of any relocation or alteration of the said transmission lines, appurtenant facilities, or supporting structures when required by the grantee for any reason, including accommodating expanded or additional highway facilities on or across said lands, will be paid by the grantee* . . . . (Emphasis added.)

¶ 6. Construction on the highway expansion was planned to begin in May 2005. The construction project involved an $864,289 grant from the Wisconsin Department of Transportation. The grant was contingent upon the County resolving any claims associated with the project. In March 2005, WEPCO informed the County that it considered the costs of relocating its lines compensable and that it would not begin relocating its lines until the County agreed to pay those costs. The DOT threatened to withdraw advertisements to let materials for the project unless the County resolved WEPCO's claim by March 25, 2005.

¶ 7. On March 24, 2005, the County and WEPCO entered into an "Audit Agreement." The agreement

---

[2] We say the conveyance "purported" to convey WEPCO's private easement rights because the County argues WEPCO effectively did not convey anything, relying upon language in the conveyance reserving rights to WEPCO. Ultimately, our decision does not require us to resolve this specific issue.

provided that the County would reimburse WEPCO for the costs of relocating its utility lines. However, the agreement contained an addendum stating:

> We Energies claims to have certain easement rights within the existing highway right of way referenced by and in the Audit Agreement. Based upon We Energies claims of easement rights, We Energies requests compensation for removing and relocating its poles presently located within the said highway right of way. In the interest of enabling the pending highway construction project to proceed in and on the right of way referenced by and in this Audit Agreement, and based upon the presentation of the said We Energies claims, Outagamie County is willing to enter into this Audit Agreement. It is expressly understood by Outagamie County and We Energies that in the event it is later determined that the said We Energies claims were not well founded in law or fact, then and in that event, We Energies agrees that it will reimburse Outagamie County the amount of money Outagamie County paid We Energies to remove and relocate said utility poles . . . .

Thus, the addendum provided that WEPCO would have to return the relocation costs paid by the County if it was later determined that WEPCO's claims "were not well founded in law or fact."

¶ 8. WEPCO relocated its utility lines and sent invoices to the County totaling $309,103.94. The County refused to pay. WEPCO commenced this action against the County alleging breach of contract, among other claims, and seeking payment of the relocation costs.

¶ 9. The circuit court granted summary judgment to the County. The court concluded that the January 2005 conveyance of easement rights was void because WEPCO was responsible for paying the relocation costs under the ordinance. The court also concluded the audit agreement was enforceable and that the County

breached the agreement by not reimbursing WEPCO for its relocation costs. However, the court concluded that the County's failure to pay the relocation costs was only a de minimus breach because, ultimately, the County would be entitled to have the costs returned pursuant to the audit agreement's addendum.

## DISCUSSION

¶ 10. The County frames the central issue as whether it can absorb WEPCO's relocation costs by contract when an ordinance explicitly requires WEPCO to pay those costs. The County contends any contract shifting those costs was void.[3] WEPCO asserts the ordinance is irrelevant and that this is simply a contract case. Further, absent the payment of its relocation costs, WEPCO contends the County effectively took WEPCO's easement rights without compensation.

■

¶ 11. We review grants of summary judgment de novo, applying the same methodology as the circuit court. *Park Bancorp., Inc. v. Sletteland*, 182 Wis. 2d 131, 140, 513 N.W.2d 609 (Ct. App. 1994). Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Wis. Stat. § 802.08.[4]

■

¶ 12. A municipality is free to deny the validity of a contract that was beyond the municipality's power to make. Village of McFarland v. Town of Dunn, 82 Wis. 2d

---

[3] Alternatively, the County argues that, if the contract was enforceable, then the County only committed a de minimus breach, as concluded by the circuit court.

[4] All references to the Wisconsin Statutes are to the 2005–06 version unless otherwise noted.

469, 474, 263 N.W.2d 167 (1978). Such contracts are ultra vires and void.[5] *Id.*; 56 AM. JUR. 2d *Municipal Corporations, Etc.* § 454 (2000). Ultra vires contracts may not be ratified by the municipality or enforced by estoppel. *See Menasha Woodenw are Co. v. Town of Winter*, 159 Wis. 437, 448, 150 N.W. 526 (1915); *McGowan v. Paul*, 141 Wis. 388, 393–94, 123 N.W. 253 (1909). A party contracting with a municipality is presumed to know that a contract in violation of a municipal code is void. *See Nielsen-Massey Vanillas, Inc. v. City of Waukegan*, 657 N.E. 2d 1201, 1207 (Ill. App. 3d 1995).

¶ 13. We conclude that the audit agreement shifting relocation costs from WEPCO to the County was void and unenforceable because it was contrary to OUTAGAMIE COUNTY ORDINANCE § 17.40(3)(g).

¶ 14. As a condition to placing utility lines in the highway setback area, the 1964 ordinance required WEPCO to bear any relocation costs resulting from a highway expansion. OUTAGAMIE COUNTY, WI, ORDINANCE § 17.40(3)(g). The validity of this type of ordinance was upheld in *Town of Portland v. WEPCO*, 198 Wis. 2d 775, 781, 543 N.W.2d 559 (Ct. App. 1995). WEPCO became subject to the ordinance when it replaced its utility lines in 1966.

¶ 15. While the County could have shifted the responsibility for WEPCO's relocation cost by repealing the ordinance, we conclude the County could not do so

---

[5] "An ultra vires contract of a municipal corporation is one which the corporation has no power to make under any circumstances or for any purpose. Ultra vires contracts of a municipal corporation are void." 56 AM. JUR. 2d *Municipal Corporations, Etc.* § 454 (2000) (footnotes omitted).

by contract so long as the ordinance remained in force. In other words, a municipality does not have the power to contract contrary to its own ordinances. Thus, it was beyond the County's power to enter into the audit agreement requiring it to reimburse WEPCO's relocation costs.

¶ 16. Additionally, we note that counties must follow specific statutory procedures when modifying ordinances, including holding a meeting with notice to the public. *See* WIS. STAT. § 59.02(2) (process for adopting ordinances) and WIS. STAT. ch. 19 (open meetings law). To permit a municipality to contract contrary to its ordinances would undermine these statutory requirements. Thus, our conclusion that the audit agreement is void and unenforceable is supported not only by the evident conflict between the audit agreement and the ordinance, but also upon the underlying conflict with the statutorily prescribed process for modifying ordinances. *See Town of Humboldt v. Shoen*, 168 Wis. 414, 418, 170 N.W. 250 (1919) (town board actions contrary to statutes were ultra vires).

■

¶ 17. WEPCO largely ignores the County's argument that the contract is void, instead asserting the ordinance is irrelevant and that this is purely a contract case. WEPCO asserts that it was not required to pay relocation costs under the ordinance because it never filed the required agreement. WEPCO also asserts that failing to pay the agreed upon relocation costs would effectively deny it the only negotiated compensation for the easement rights conveyed to the County. We reject both arguments.

■

¶ 18. Pursuant to OUTAGAMIE COUNTY, WI, ORDINANCE § 17.40(3)(g) and WEPCO's subsequent replace-

ment of its utility lines, WEPCO was required to file an agreement to pay any costs of relocating those lines pursuant to a highway expansion. The County was permitted to require that agreement as a condition to using the otherwise restricted setback area. *Town of Portland*, 198 Wis. 2d at 781. WEPCO offers no compelling reason why the County should bear the burden of WEPCO's noncompliance with the ordinance. We do not agree that WEPCO's failure to file the agreement, despite its beneficial use of the setback area, should absolve it from paying the relocation costs.

¶ 19. Additionally, WEPCO's argument that voiding the contract would deny it just compensation for its easement rights is unconvincing.[6] WEPCO argues that the audit agreement's provision regarding relocation costs was not actually an attempt to shift those costs, but instead a substitute for other compensation for its easement rights. However, WEPCO points to no evidence that the easement rights actually had any value or that WEPCO has suffered a loss aside from the costs of relocating its utility lines.[7] WEPCO does not dispute that it was entitled to place its utility lines within the

---

[6] We need not address separately the effect of the "Conveyance of Rights" document, which purported to convey WEPCO's easement rights and attempted to shift WEPCO's relocation costs to the County. WEPCO does not argue that the conveyance document was valid absent the County's payment of relocation costs. Because we conclude that WEPCO is not entitled to have the County pay its relocation costs, we are presented with no basis for reversing the circuit court's determination that the conveyance was void.

[7] From the discussion in *Town of Portland v. WEPCO*, 198 Wis. 2d 775, 781, 543 N.W.2d 559 (Ct. App. 1995), it appears that utilities are required to pay relocation costs when their utility lines are placed within a highway right-of-way. It thus appears that the initial incentive for obtaining private easement

right-of-way. From the language of the addendum to the audit agreement, it is apparent that WEPCO believed it was entitled to relocation costs as a matter of right and that the agreement to pay those costs was not in lieu of some other consideration. Because WEPCO was responsible for the relocation costs and those costs could not be shifted to the County by contract, we cannot agree that WEPCO was deprived of something of value without evidence that value actually existed.

*By the Court.*—Judgment affirmed.

rights outside the right of way may have been to avoid responsibility for relocation costs. Here, to the extent the 1964 ordinance may have negated the value of WEPCO's private easement rights by shifting relocation costs, that issue should have been addressed then rather than now.