FITZPATRICK, J.
¶1 DSG Evergreen Family Limited Partnership appeals from an order of the Dane County Circuit Court dismissing DSG's claims against the Town of Perry. This case arises out of a partial taking of, and monetary compensation for, DSG's real estate by the Town, which was affirmed by this court. DSG Evergreen Family Ltd. Partnership v. Town of Perry , No. 2011AP492, unpublished slip op. (WI App Dec. 6, 2012) [hereinafter DSG I ].
¶2 The taking consisted of the portion of DSG's property which abutted County Highway Z, including a "field road" that provided the remainder of DSG's property with access to that highway. The Town's condemnation petition included an obligation of the Town to construct a new field road for DSG, "built to the same construction standards as the [old] field road." The Town has constructed a new field road for DSG after condemnation of the property and before this action was filed.
¶3 In this lawsuit, DSG makes two claims against the Town. First, DSG seeks a declaratory judgment that the Town was required to build the new field road so that it met statutory standards set forth in WIS. STAT . § 82.50 (2015-16)[1] or, alternatively, to the standards in a Town ordinance. Second, DSG claims that the Town violated its obligation to construct the new field road for DSG set forth in the condemnation petition because the new field road did not meet the construction standards of DSG's previous field road.
¶4 The circuit court granted summary judgment in favor of the Town and dismissed DSG's claims. The court concluded that neither WIS. STAT . § 82.50 nor the Town's ordinances create a private right of action. The circuit court also determined that DSG's claim that the Town failed to meet its obligation under the condemnation petition was barred pursuant to the doctrine of claim preclusion. We conclude that neither § 82.50 nor the Town's ordinances provide a private right of action in favor of DSG in these circumstances, and the doctrine of claim preclusion bars DSG's second cause of action. We therefore affirm.
BACKGROUND
¶5 The parties have a lengthy and relatively complex litigation history, but we need not mention that history in detail. As background, we provide material facts and procedural history to the extent necessary to place our discussion of the parties' arguments within the proper context. The parties stipulated in the circuit court to a number of pertinent facts. Additional background is gleaned from the record and a prior decision of this court, and these facts are materially undisputed.
¶6 In February 2006, pursuant to WIS. STAT . § 32.06(7), the Town initiated an eminent domain action by filing a petition for condemnation proceedings describing a roughly 12-acre parcel belonging to DSG. The Town's purpose in seeking condemnation was to construct a public park to be known as the Hauge Log Church Historic District Park. The proposed taking was a partial one consisting of DSG's property abutting County Highway Z, with the remainder parcel of DSG's property not subject to condemnation consisting of about 80 acres. The proposed taking included a field road[2] that, up to that time, provided DSG's remainder parcel with access to County Highway Z.
¶7 Under the terms of the condemnation petition, the Town was obligated to replace the old field road as noted:
The Town will replace the [old] field road on the 12.13 acre parcel to be acquired with a new field road from Highway Z along the northern boundary of the Hauge Church Park boundary to the western boundary of the proposed Park in order to provide access to the Owner's other lands in the Town of Perry and for park-related purposes subject to the Hauge Church Park Regulations. This field road will be built to the same construction standards as the [old] field road.
(Emphasis added.) The parties agree that: (a) the petition required the Town to build the new field road in a different location than the location of the old field road; and (b) the Town built the new field road in the location described in the petition.
¶8 In March 2008, the Town acquired title to the approximately 12-acre parcel. In February 2009, a jury trial determined just compensation owed to DSG from the Town for that taking. The parties entered a stipulation before the circuit court regarding that jury trial as follows:
The essential issue tried in the just compensation trial was the determination of the fair market value of the entirety of DSG's property before the Taking and the fair market value of DSG's property after the Taking assuming completion of the project for which the Taking occurred, including the construction of the new field road under the terms of the Petition .
(Emphasis added.) Thus, the parties agree that the jury was told that DSG would receive a new "field road built to the same construction standards as the [old] field road."
¶9 Of importance to the construction of the new field road, the parties further stipulated that:
During the [just compensation] trial, DSG introduced in evidence an engineering report from JSD Professional Services, Inc. ("JSD") dated November 17, 2008, a copy of which is attached to this stipulation as Exhibit F. There was no testimony during the trial regarding the scope of the Town's obligation under the Petition to construct a new field road.
Notably, the engineering report from DSG's expert states that the proposed new field road could not be equivalent to the old field road because of physical limitations and attributes of the area described in the petition where the new field road would be built. According to the engineering report, the new field road to be built by the Town would "not [be] equivalent with" the old field road because the location of the new field road involved "much steeper slopes, less width and significantly poorer intersection sight distance" than did the old field road. Additionally, the report states that the area where the new field road would be built lacked adequate space for storm water management facilities that would meet Town, County, and State requirements.[3] The jury set the amount of just compensation for the taking at $312,500, and this court affirmed that award in DSG I .
¶10 In November 2009, the Town sent a letter to DSG indicating that it had finished construction of the new field road. DSG responded and alleged that the new field road was inferior to the old field road. Specifically, DSG complains that the new field road differs from the old field road in the following respects:
(1) Narrower average width than the old field road.
(2) Steeper maximum slope than the old field road.
(3) Lack of a pond for storm water detention.
(4) Lack of an emergency turn-out (the old field road included an emergency turn-out to allow for clear passage of vehicles traveling in opposite directions).
(5) Lack of a turn-around (the old field road had a turn-around area).
The Town does not dispute DSG's account of how the new field road now differs from the old field road.
¶11 In 2015, DSG initiated the present action against the Town. The circuit court granted partial summary judgment in favor of the Town, concluding that DSG did not have a private right of action under WIS. STAT. § 82.50, or the Town's ordinances, and dismissed DSG's claim that the Town was obligated to construct the new field road in accordance with the standards established in § 82.50 or the Town's ordinances. Later, the circuit court dismissed DSG's second claim that the new field road built by the Town did not meet the same construction standards as the old field road, concluding that the claim was barred pursuant to the doctrine of claim preclusion. This appeal followed.
¶12 We refer to additional pertinent facts in the following discussion.
DISCUSSION
¶13 The parties have stipulated to the material facts, and the parties do not dispute that this case presents questions of law that this court can decide on the basis of the stipulated facts. In other words, the parties concur that we will decide whether summary judgment should be granted to DSG or the Town on the two questions presented.
I. Standards of Review and Summary Judgment Procedure.
¶14 This court reviews a grant of summary judgment de novo, using the same methodology as the circuit court. WIS. STAT. § 802.08 ; Farr v. Alternative Living Servs., Inc. , 2002 WI App 88, ¶7, 253 Wis. 2d 790, 643 N.W.2d 841. The procedure for summary judgment is well established. Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Sec. 802.08(2) ; Yahnke v. Carson , 2000 WI 74, ¶10, 236 Wis. 2d 257, 613 N.W.2d 102.
¶15 The question of whether a statute creates a private right of action presents an issue of statutory interpretation that this court reviews de novo. Farr , 253 Wis. 2d 790, ¶14 ; Grube v. Daun , 210 Wis. 2d 681, 687, 563 N.W.2d 523 (1997). Whether a statute creates a private right of action "is a question of law appropriate for decision on summary judgment." Duello v. Board of Regents of Univ. of Wisconsin Sys. , 220 Wis. 2d 554, 560, 583 N.W.2d 863 (Ct. App. 1998).
¶16 "The question of whether claim preclusion applies under a given factual scenario is a question of law that this court reviews de novo." Northern States Power Co. v. Bugher , 189 Wis. 2d 541, 551, 525 N.W.2d 723 (1995).
¶17 We begin by addressing whether DSG has a private right of action under either WIS. STAT. § 82.50 or the Town's ordinances.
II. Private Right of Action.
¶18 DSG argues that the Town has failed to comply with statutory duties imposed by WIS. STAT. § 82.50 or its own ordinances and, therefore, DSG may pursue declaratory relief against the Town. We disagree.
A. Applicable Law.
¶19 The touchstone for determining whether a statute creates a private right of action is the expression of legislative intent to do so. See Grube , 210 Wis. 2d at 689. A statute creates a private right of action only when: "(1) the language or the form of the statute evinces the legislature's intent to create a private right of action, and (2) the statute establishes private civil liability rather than merely providing for protection of the public." Id.[4]
¶20 DSG argues that the Grube analysis is limited to consideration of private rights of action in the tort context and does not apply here. DSG is wrong. Grube concerned tortious liability under a hazardous substance discharge statute. Grube , 210 Wis. 2d at 684-85. However, at least one of the cases cited with approval in Grube was not a tort action and, in that case, our supreme court used an analysis similar to that in Grube to determine whether a statute created a private cause of action. See McNeill v. Jacobson , 55 Wis. 2d 254, 260, 198 N.W.2d 611 (1972). That is, in McNeill (and in Grube ), the court also analyzed whether the statute contained an expression of legislative intent to create a private right of action, and whether the statute or regulation was intended to protect the public rather than establish civil liability. Id.
B. DSG Does Not Have a Private Right of Action Under WIS. STAT . § 82.50.
¶21 DSG relies on WIS. STAT . § 82.50 for its contention that it has a statutory basis for its cause of action against the Town that the new field road was not built to the applicable standards. Section 82.50(1) provides minimum standards for town roads. Those standards concern, among other things, roadway width, surface width, maximum road grade, and curvature of the road. Sec. 82.50(1). Nothing in the statute suggests that the legislature intended to provide a private right of action to compel towns to build or repair roads to the standards listed. More broadly, WIS. STAT . ch. 82 does not include any other provision indicating a private right of action or otherwise suggesting that private citizens and entities are meant to enforce the standards. In other words, there is no clear expression of legislative intent to create a private right of action to enforce town road standards through § 82.50(1). And, DSG has not pointed to anything in the statutory scheme to suggest that a right of action arises by implication.
¶22 DSG argues that, even though WIS. STAT . ch. 82 does not explicitly provide a right of action, it nevertheless establishes duties that the Town must follow with respect to town roads. See WIS. STAT. § 82.03. According to DSG, one of these duties is to maintain town roads in accordance with WIS. STAT. § 82.50. DSG relies on two mandamus cases in support of its argument: State ex rel. Cabott v. Wojcik , 47 Wis. 2d 759, 177 N.W.2d 828 (1970) and State ex rel. Wollner v. Schloemer , 200 Wis. 350, 228 N.W. 487 (1930). DSG contends that these cases stand for the proposition that the state's highway laws impose affirmative duties on town boards which may be enforced by private parties in a mandamus action. Thus, DSG argues that it may bring the present action as one for declaratory judgment under the same theory relied on in those cases.
¶23 However, unlike WIS. STAT. § 82.50, the statutes at issue in Cabott and Wollner set forth a clear, unequivocal duty.[5] In Cabott , for example, our supreme court held only that Wisconsin law requires a town board "to put any highway that becomes impassable in a passable condition as soon as practicable," and nothing more. Cabott , 47 Wis. 2d at 764. Cabott did not hold that a town has a duty to construct roads to particular standards. Rather, the court held that "[i]t is, of course, clear that this court could not, in the absence of statutory guidelines, direct the town board ... to perform a particular type of construction or to specify the manner by which the roads are to be made passable." Id. at 768. Likewise, in Wollner the court held that it would "not attempt to control the discretion of the board as to the character of repairs that are to be made." Wollner , 200 Wis. at 353. Further, in State ex rel. Wisniewski v. Rossier , 205 Wis. 634, 238 N.W. 825 (1931), the court confirmed that "this court never intended to hold [in Wollner ] that mandamus may be invoked in this state to compel a town board to repair or to maintain a highway." Wisniewski , 205 Wis. at 637. Yet, by requesting a declaratory judgment that the Town must improve the new field road to specific statutory standards, that is precisely what DSG asks this court to do.
¶24 For these reasons, we conclude that the mandamus cases cited by DSG do not support a cause of action to compel the Town to improve the new field road.
C. DSG Does Not Have a Private Right of Action Under the Town's Ordinances.
¶25 DSG also contends that the Town must construct the new field road to the minimum standards set forth in its Town Road Ordinance. Town of Perry, Wis., Town Road Ordinance § 1.14 (Apr. 15, 1996). However, as with WIS. STAT. § 82.50, DSG does not point to any language in any Town ordinance that would suggest a private right of action. DSG argues that it is well established that municipalities are bound by their own ordinances, citing Wisconsin Electric Power Co. v. Outagamie County , 2008 WI App 75, ¶15, 311 Wis. 2d 746, 752 N.W.2d 388. It is correct that municipalities are bound by their own ordinances, but it does not follow from that proposition that DSG has a private right of action to enforce those ordinances, and Wisconsin Electric Power Co. does not support DSG's position.
¶26 Finally, DSG argues that it is not seeking to impose civil liability on the Town but, rather, seeking a declaratory judgment that the Town is obligated to construct a road pursuant to certain standards in a statute or ordinance. This argument leads to a dead end. Our determination that neither WIS. STAT . § 82.50 nor the Town's ordinances create a private right of action establishes that DSG has no legal right to compel the Town to construct a road according to the standards listed in those laws regardless of the procedural vehicle used by DSG or the specific relief requested.
¶27 In sum, we conclude that neither WIS. STAT . § 82.50 nor the Town's ordinances create a private right of action for DSG against the Town in these circumstances.
¶28 We now consider DSG's claim that the Town failed to meet its obligations under the condemnation petition to build a new field road "to the same construction standards as the [old] field road."
III. DSG's Second Claim is Barred by the Doctrine of Claim Preclusion.
¶29 DSG argues that the circuit court erred in holding that its second claim is barred by the doctrine of claim preclusion. For the following reasons, we disagree with DSG and conclude that claim preclusion bars that cause of action.
A. Applicable Law.
¶30 "The doctrine of claim preclusion provides that a final judgment on the merits in one action bars parties from relitigating any claim that arises out of the same relevant facts, transactions, or occurrences." Kruckenberg v. Harvey , 2005 WI 43, ¶19, 279 Wis. 2d 520, 694 N.W.2d 879. "[U]nder claim preclusion, 'a final judgment is conclusive in all subsequent actions between the same parties as to all matters which were litigated or which might have been litigated in the former proceedings. ' " Bugher , 189 Wis. 2d at 550 (quoting Lindas v. Cady , 183 Wis. 2d 547, 558, 515 N.W.2d 458 (1994) ) (emphasis added). "[T]he doctrine of claim preclusion provides an effective and useful means to 'relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication.' " Id. at 559 (quoting Allen v. McCurry , 449 U.S. 90, 94 (1980) ).
¶31 Under Wisconsin law, the doctrine of claim preclusion requires consideration of the following elements:
(1) an identity between the parties or their privies in the prior and present suits;
(2) prior litigation resulted in a final judgment on the merits by a court with jurisdiction; and
(3) identity of the causes of action in the two suits.
See id. at 551.
¶32 The parties do not dispute that the first and second elements are satisfied here. Instead, the parties dispute whether there is an identity between DSG's second claim in this lawsuit and those claims in the just compensation case.
¶33 The question of whether there exists an identity of causes of action in the two suits is determined under Wisconsin law by using a transactional approach derived from the RESTATEMENT ( SECOND ) OF JUDGMENTS . Id. at 553. Under that approach:
(1) When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger or bar ..., the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.
(2) What factual grouping constitutes a "transaction", and what groupings constitute a "series", are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.
RESTATEMENT ( SECOND ) OF JUDGMENTS § 24 ( AM. LAW INST . 1982) ; see also Bugher , 189 Wis. 2d at 553-54. Under the transactional approach, "the number of substantive theories that may be available to the plaintiff is immaterial-if they all arise from the same factual underpinnings they must all be brought in the same action or be barred from future consideration." Bugher , 189 Wis. 2d at 555 ; see also RESTATEMENT ( SECOND ) OF JUDGMENTS § 24 cmt. a (broadly defining claim to "embrace all the remedial rights of the plaintiff against the defendant growing out of the relevant transaction"). The transactional approach reflects "the expectation that parties who are given the capacity to present their 'entire controversies' shall in fact do so." Kruckenberg , 279 Wis. 2d 520, ¶27 (quoting RESTATEMENT ( SECOND ) OF JUDGMENTS § 24 cmt. a).
¶34 We now apply these precepts to DSG's second cause of action.
B. Claim Preclusion Bars DSG's Second Cause of Action.
¶35 For the following reasons, we conclude that the third element is satisfied and therefore DSG's claim is barred pursuant to the doctrine of claim preclusion.
1. DSG's Argument.
¶36 DSG's position is that it should now have a new field road with the same dimensions and features as the old field road, the only difference being that the new field road runs along the new, agreed upon location. In DSG's view, under the terms of the condemnation petition, the Town "essentially promised to give back the equivalent of what it was taking as to the physical means of accessing the remainder of DSG's property," and "DSG understood the phrase 'same construction standards as the [old] field road' to mean that it would receive a new field road that was the substantial equivalent to its [old] field road." We will assume, without deciding, that DSG's expressed interpretation of the pertinent condemnation petition language is what DSG believed at the time of the 2009 condemnation trial, and that DSG has accurately described the Town's obligation in building the new field road.
2. Material, Undisputed Facts.
¶37 We have already noted the five aspects of the new field road that DSG contends make it "substantially inferior" to the old field road: average width, maximum slope, lack of a pond for storm water detention, lack of an emergency turn-out, and lack of a turn-around.
¶38 As discussed in the Background section, above, before and at the time of the just compensation trial in 2009, DSG knew that it would not receive an equivalent field road in all respects. The engineering report, commissioned by DSG and introduced into evidence at the just compensation trial by DSG, shows that the new field road would not be equivalent with the old field road with regard to three aspects DSG now complains of: width, slope, and capacity for a pond for storm water detention. Thus, DSG knew before and at the time of the just compensation trial that the Town could not comply with the terms of the condemnation petition.[6]
3. Analysis.
¶39 Based on these facts, and using the approach adopted by our supreme court, we conclude that there is an identity of causes of action in the two suits.
¶40 To repeat, the parties stipulated that the issue tried before the jury in the condemnation trial was a comparison of the entirety of DSG's property before and after the Town's taking of the 12-acre parcel and "assuming completion of the project for which the Taking occurred, including the construction of the new field road under the terms of the Petition." That petition stated that the Town would construct a new field road for DSG to "the same construction standards as the [old] field road." Therefore, whether DSG would receive a new field road with all the pertinent attributes of the field road that DSG believed it would receive pursuant to the terms of the condemnation petition was a material issue that the jury could have been asked to consider in making its determination of the just compensation owed to DSG by the Town. But, as shown, DSG knew before and at the time of the condemnation trial that it could not receive a new field road with all the attributes DSG believed it would get consistent with the terms of the condemnation petition. And, in the present lawsuit, DSG claims that it did not receive from the Town the new field road it thought it would get under the terms of the condemnation permit.
¶41 The Wisconsin Supreme Court instructs that:
[W]hat factual grouping constitutes a "transaction" ... [is] to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.
Bugher , 189 Wis. 2d at 554 (quoting RESTATEMENT ( SECOND ) OF JUDGMENTS § 24(2) ). Examined by that standard, any reasonable view of the facts leads to the conclusion that the question of just compensation owed to DSG as determined in the 2009 trial is the same "transaction" as the claim in DSG's second cause of action in this case in which DSG complains that it did not receive from the Town the new road that DSG thought it would get. Those issues are related in time, location, and motivation to litigate, and the issues arise out of the parties' expectations and understanding of the terms of the condemnation petition regarding the new field road's attributes.
¶42 In other words, DSG knew before and at the time of the condemnation trial that the Town could not comply with the interpretation of the condemnation petition that DSG advocates in this lawsuit. Under claim preclusion principles, DSG cannot now request relief that the Town is not complying with the condemnation petition when DSG failed to raise that issue in the previous lawsuit. Claim preclusion applies not only to all matters which were litigated in a prior lawsuit but also all matters "which might have been litigated in the former proceedings." Id. at 550 (quoting Lindas , 183 Wis. 2d at 558 ).
4. This Dispute Could Have Been Raised by DSG in the Previous Lawsuit.
¶43 We are not persuaded by DSG's arguments that the substance of its second cause of action in this case could not have been litigated in the just compensation lawsuit.
¶44 First, the Town argues in this court that DSG could have raised, in the just compensation lawsuit, the issue of whether the Town could meet its obligation to build a new field road consistent with the terms of the Amended Jurisdictional Offer (the terms of which are identical to the condemnation petition regarding the obligation of the Town to build a new field road) in a right-to-take challenge pursuant to WIS. STAT. § 32.06(5), but DSG failed to do so. The Town also contends in this court that DSG conceded in the circuit court that the right-to-take challenge would have been the proper remedy. DSG did not dispute either point in its reply brief. Therefore, the points are conceded by DSG. See DNR v. Building & All Related or Attached Structures Encroaching on Lake Noquebay Wildlife Area , 2011 WI App 119, ¶21, 336 Wis. 2d 642, 803 N.W.2d 86.
¶45 Second, DSG argues that the substance of the second claim in this lawsuit could not have been litigated at the time of the just compensation trial because DSG did not know, and could not have known, at the time of that trial that it would not receive a new field road that was the equivalent of the old field road. In DSG's view, the present claim arose only after the Town allegedly reneged on its obligation to build an equivalent field road. We reject DSG's argument because, for reasons already described, DSG had knowledge of the fact that the new field road could not be equivalent to the old field road at and before the time of the just compensation trial. So, the factual basis of this argument of DSG necessarily fails.
¶46 Third, DSG argues that it could not have made an argument, or presented evidence to the jury, in the just compensation trial regarding the scope of the Town's obligation or that DSG deserved greater compensation because the new field road would not be equivalent to the old field road. But, as noted, the parties' stipulation of facts plainly demonstrates that the construction of the new field road under the terms of the condemnation petition was one of the issues tried in the just compensation trial. There is nothing in the record to support DSG's contention that it could not have raised the issues before the jury, and we are aware of nothing that prevented DSG from presenting evidence to the jury on the issue. The evidence was plainly relevant, and relevant evidence is generally admissible under Wisconsin law. WIS. STAT. §§ 904.01, 904.02. In fact, DSG took the first step on this path when it introduced its own expert's engineering report into evidence. Nothing prevented DSG from making an argument to the jury or asking questions of witnesses based on that evidence.
¶47 Indeed, DSG appears to understand now that it should have raised the issue, acknowledging that "[i]n the bright sunlight of subsequent events ... perhaps some effort should have been made to clarify the language of the [obligation]." DSG cautions that this court must avoid "the distorting effects of hindsight," but we see nothing "distorting" about applying the law of claim preclusion to stipulated and materially undisputed facts.[7] DSG's statements about hindsight confirm that DSG's arguments fail.
¶48 In sum, we conclude that DSG's second cause of action is barred by the doctrine of claim preclusion.
C. A Special Exception Is Not Warranted.
¶49 Next, DSG argues that a special exception to claim preclusion is warranted here. Any exceptions to claim preclusion are "rare" and must be "narrowly drawn," a point underscored by the Wisconsin Supreme Court in Kruckenberg . 279 Wis. 2d 520, ¶¶37, 42. Under § 26(1)(f) of the RESTATEMENT ( SECOND ) OF JUDGMENTS , which the Wisconsin Supreme Court quoted with approval, a special exception is warranted only if "[i]t is clearly and convincingly shown that the policies favoring preclusion of a second action are overcome for an extraordinary reason ...." RESTATEMENT ( SECOND ) OF JUDGMENTS , § 26(1)(f) ; Kruckenberg , 279 Wis. 2d 520, ¶38. We also observe that, since Kruckenberg , no Wisconsin court has granted another special exception to claim preclusion.
¶50 We conclude that DSG has not shown in a clear and convincing fashion that there is an extraordinary reason why its actions or inactions should be excused. Further, we conclude that DSG has not proposed a narrowly drawn exception to claim preclusion.
¶51 In Kruckenberg , the court reviewed an action seeking a declaratory judgment regarding the location of a boundary line between adjoining properties. Kruckenberg , 279 Wis. 2d 520, ¶¶1-2. In a prior action brought by the plaintiff's predecessor-in-title, the defendant admitted in his answer that a ditch had been dug on the boundary line, and the parties later stipulated to the dismissal of the suit. Id. , ¶¶5-8. The later property owner had the land surveyed, determined that the property line was actually located elsewhere, and brought a suit for declaratory judgment. Id. , ¶¶10-12. The circuit court dismissed the action pursuant to the doctrine of claim preclusion, concluding that the defendant's admission about the placement of the boundary line in the prior lawsuit had effectively fixed the boundary line because plaintiff's predecessor-in-title did not dispute that admission. Id. , ¶13. The Wisconsin Supreme Court recognized that, in certain types of cases, policy reasons warrant an exception to the doctrine of claim preclusion, and the court created an exception. Id. , ¶37.
¶52 The supreme court, in Kruckenberg , identified three public policy considerations which led to its adoption of a narrow exception to the doctrine of claim preclusion in that context. Id. , ¶¶42-47. Those considerations were: (1) the court did not wish to encourage over-litigation in cases involving real property disputes; (2) the court did not wish to discourage prompt settlement of real property disputes; and (3) the court did not want to elevate process over truth. Id.
¶53 For several reasons, we do not read Kruckenberg to support an exception in the present case.
¶54 First, Kruckenberg addressed the very specific, narrow question of boundary lines. DSG argues that eminent domain has its own unique procedures and involves a real property-related dispute. While true, that does not lead to the conclusion that a special exception is warranted. Our supreme court's discussion in Kruckenberg of the significance of boundary lines provides no basis to conclude that a special exception is warranted in the context of eminent domain disputes simply because Kruckenberg and this case both concern real estate.
¶55 Second, DSG argues that this court "should be more concerned with ensuring DSG has received just compensation and that [the Town] actually fulfilled the obligations it created for itself than simply ending litigation." This free-form argument carries no weight because it has no identifiable starting or ending point. Similar to DSG's other contentions on this point, DSG discusses its proposed special exception in such a generalized and vague way that, if we agree with DSG, claim preclusion would effectively cease to exist as a doctrine in Wisconsin because every case would warrant a special exception. Clearly that is not our supreme court's intention.
¶56 Third, DSG asserts that a special exception is warranted because the application of claim preclusion in this case "takes all the responsibility away from [the Town]" and DSG "should not be punished for [the Town's] mistake." This argument amounts to a request that this court add a fairness element to the claim preclusion analysis. Our supreme court, however, "has not adopted fairness as a factor in the doctrine of claim preclusion." Id. , ¶52. In fact, the court forcefully rejected the notion that courts should apply a fairness element on an ad hoc basis:
The court of appeals decisions requiring a court to conduct a "fundamental fairness" analysis in applying the doctrine of claim preclusion import the fairness concept from issue preclusion cases without articulating a rationale for the importation. Furthermore, the importation of a fairness analysis to claim preclusion contravenes basic policies underlying the doctrine of claim preclusion. Under these circumstances, the efficacy of these court of appeals decisions as precedential or persuasive authority is limited. For these reasons, we ... disavow any language in the decisions of the court of appeals to the extent that the language requires a court to conduct a "fundamental fairness" analysis in applying the doctrine of claim preclusion or allows litigation of an otherwise barred claim to continue simply because in that particular case, application of the doctrine of claim preclusion might appear unfair.
Id. , ¶62. Accordingly, DSG's argument concerning the fairness of applying claim preclusion carries no weight.
¶57 For those reasons, we reject DSG's request for a special exception to the doctrine of claim preclusion.
D. Estoppel Arguments.
¶58 DSG also argues that the Town is judicially and equitably estopped from asserting positions inconsistent with DSG's interpretation of the facts and the Town's obligations under the condemnation petition. We reject DSG's contentions because DSG forfeited both estoppel arguments by failing to present those to the circuit court. See Schill v. Wisconsin Rapids Sch. Dist. , 2010 WI 86, ¶45, 327 Wis. 2d 572, 786 N.W.2d 177. In its reply brief on appeal, DSG argues that it presented the estoppel argument to the circuit court and cites to the record. The only reference to estoppel in that portion of the record is a brief remark by the circuit court: "So what you're arguing is an estoppel." DSG's counsel responded: "Yes. I suppose that's probably a more accurate doctrine than contract, but, yeah." That exchange, with nothing more, does not amount to presenting an issue before the circuit court. Accordingly, we conclude that DSG forfeited the two estoppel arguments.[8]
CONCLUSION
¶59 For the foregoing reasons, we affirm the order of the circuit court.
By the Court. -Order affirmed.
Not recommended for publication in the official reports.

All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.

A stipulation of the parties in the circuit court refers to the field road that was in place on DSG's property before the taking as the "Old Driveway." The petition refers to it as the "existing field road." For clarity, we refer to that road, instead, as the "old field road" to prevent any confusion with the "new field road" that the Town was obligated to construct pursuant to the petition.

The portion of the engineering report regarding storm water management is pertinent to issues raised on appeal because, pursuant to Dane County ordinances, a pond for storm water detention is required when more than 20,000 square feet of "impervious surfaces" are created by a development. See Dane County, Wis., Code ch. 14, § 14.46(1) (2013). The old field road was constructed by DSG based on its plans to create impervious surfaces (as an example, asphalt on the road) to reach a proposed house and agriculture building to be located on DSG's property, and DSG also wanted the new field road to be an impervious surface at some point. For that reason, DSG wanted a pond for storm water detention built with the new field road.

DSG does not argue that Wis. Stat. § 82.50 is a safety statute, the violation of which would be negligence per se and may grant a right to relief to the injured party. See Grube v. Daun , 210 Wis. 2d 681, 692, 563 N.W.2d 523 (1997).

Wisconsin Stat . § 82.50 does not state that municipalities shall construct roads according to the following standards. In contrast, the language interpreted by the Wisconsin Supreme Court in Cabott and Wollner was unequivocal. See, e.g. , Wis. Stat. § 82.05(3) ("When any highway under the superintendent's charge becomes impassable, the superintendent shall put the highway in passable condition as soon as practicable.") (emphasis added); Wis. Stat . § 82.03(1)(a) ("Where no superintendent of highways is appointed, it shall be the duty of the town board to perform all of the duties that are prescribed by law for the superintendent of highways to perform, including keeping the highways passable at all times."). These statutes have not changed in any material way since our supreme court decided Cabott , except that our legislature renumbered each statute. See Wis. Stat. § 81.03 (1969) ("When any highway under [the superintendent's] charge becomes impassable he shall put the same in passable condition as soon as practicable.") (emphasis added); Wis. Stat . § 81.01(1) (1969) ("Where no superintendent of highways is appointed, it shall be the duty of the town board to perform all the duties that are prescribed by law for the superintendent of highways to perform.") (emphasis added).
Similarly, the statutes in Wollner have not changed in any material way, except that our legislature renumbered each statute. See Wis. Stat . § 66.1003(10) ("[N]o ... town board may discontinue a highway when the discontinuance would deprive a landowner ... of all access to a highway."); Wis. Stat . § 86.06(1) ("Whenever any highway is impassable or unsafe for travel ... and until it is ready for traffic the authorities in charge of the maintenance or construction thereof may keep it closed"); Wis. Stat . § 80.02 (1929) ("No town board shall discontinue ... any highway when such discontinuance would deprive the owner of lands of access therefrom to the public highway.") (emphasis added); Wis. Stat . § 81.10(1) (1929) ("Whenever any highway in charge of the town board is impassable or unsafe for travel ... and thereafter until it is ready for traffic the town board may close the same."). We observe that Wollner also considered Wis. Stat . § 81.14 (1929). Former § 81.14 provided for appeals to the county board where a town refused, failed, or neglected to repair a public highway, and the statute was repealed by 2003 Wis. Act 214. The repeal of that statute does not affect the holding of Wollner or change the result in the present case.

Neither party asserts that claim preclusion applies to each separate aspect of the new field road DSG complains of. Instead, the parties analyze these five attributes together as a singular issue. Accordingly, although we recognize that DSG has five concerns about the new field road, we follow the lead of the parties and conduct our analysis of claim preclusion with regard to the new field road as a whole. We also observe that this mode of analysis comports with the transactional approach to claim preclusion required under Wisconsin law. "What factual grouping constitutes a 'transaction' ... [is] to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." Restatement ( Second ) of Judgments § 24(2) ( Am. Law Inst . 1982) ; Northern States Power Co. v. Bugher , 189 Wis. 2d 541, 553-54, 525 N.W.2d 723 (1995).

The case on which DSG relies for this point, State v. Breitzman , 2017 WI 100, ¶65, 378 Wis. 2d 431, 904 N.W.2d 93, is completely distinguishable. It concerned a claim of ineffective assistance of counsel, not a question regarding claim preclusion.

In briefing in this court, DSG devotes substantial energy to arguing that promises of future actions by condemnors can properly form a part of just compensation for a taking. The circuit court, in its written decision and order dismissing DSG's second cause of action, considered Wisconsin Supreme Court opinions which hold that such a future promise cannot form a part of just compensation for a taking. See Milwaukee Elec. Ry. & Light Co. v. Becker , 182 Wis. 182, 196 N.W. 575 (1923) ; McCord v. Sylvester , 32 Wis. 451 (1873) ; Thompson v. Milwaukee & St. P. Ry. Co. , 27 Wis. 93 (1870). Because we conclude that claim preclusion bars DSG's claims, we need not consider whether the circuit court decided this issue correctly, and we express no opinion on the issue. Lecander v. Billmeyer , 171 Wis. 2d 593, 602, 492 N.W.2d 167 (Ct. App. 1992) (appellate court may affirm circuit court judgment even if the circuit court reached its decision for different reasons); see also Sweet v. Berge , 113 Wis. 2d 61, 67, 334 N.W.2d 559 (Ct. App. 1983) (appellate court need not review other issues where one issue is dispositive).